FRANCES BARCELLO v. L. S. HAPGOOD.

*The Code, Sections 632, 640, 685, 1590, 1602, 2779, 2781— Judicial Sales of Infants' Lands—Private Sales by Order of Court—Jurisdiction in Equity—Purchasers at Judicial Sales Protected — Foreign Corporation's Rights to Real Estate—Deeds of Corporations—Proof of Charter of Foreign Corporation — Official Acts Presumed Valid—Probate of Deeds of Non-Residents and Corporations—Implied Powers of Corporations— Forestalling—" Broadside " Exceptions—Great Seal of a State.*

1. It is not irregular or erroneous to order the sale of an infants' land to be made privately by the guardian.

2. *The Code* does not take away from the superior courts the jurisdiction heretofore exercised by courts of equity.

3. By Section 1602, *The Code*, the clerk and court in term have concurrent jurisdiction in the matter of ordering a sale of infants' lands upon petition of their guardians.

4. A stranger, who purchases lands in good faith at a sale made under the judgment of a court having general jurisdiction over the person and subject matter, acquires a good title. He is not required to look behind the judgments of the higher courts and pass upon their regularity.

5. A guardian petitioned for a sale of land, owned by herself and her wards, under Section 1602, *The Code*. The clerk, as probate judge, ordered a reference to ascertain the truth of the petition and advisability of a sale. The referee reported favorably and his report was confirmed by the clerk. Then the judge of the superior court rendered judgment authorizing a sale of the land by the guardian at private sale ; *Held*, that the purchaser at such sale acquired a good title.

6. *The Code*, Section 1590, requiring sales by guardians to be publicly made, does not apply to sales made under directions of the superior court in exercise of its general jurisdiction in equity.

7. *The Code*, Section 640, confers full authority upon clerks of courts of record in other states to probate deeds ; and the courts of this State will take judicial cognizance of the official seals of such officers attached to certificates of probate.

8. Commissioners of affidavit are empowered by *The Code*, Section 632, to take acknowledgments of deeds in other states by residents of this State and of the state for which such commissioners are appointed ; and by Section 640 equal authority is vested in clerks of courts of record in other states.

9. Foreign corporations, having a right under their charters to acquire and sell land, can exercise such rights in this State to the same extent that corporations of this State can do so.

10. A strictly private corporation can lawfully sell any of its property, real or personal, just as an individual can ; but such is not the case with corporations which are *quasi* public, and have duties to perform in which the public are interested.

11. A corporation chartered for the purpose of mining and milling ores has the right, by implication of law, to buy and sell real estate essential to the successful prosecution of its business.

12. When it is doubtful whether the right to hold land comes within the purview of a corporation's powers, that question can be raised as against any corporation exhibiting title to realty only by a proceeding authorized by the State.

13. Corporations possess by legal implication such powers as are essential to the exercise of the powers expressly conferred and necessary to attain the main objects for which they were formed.

14. *The Code*, Section 685, directing the method by which corporations may execute deeds, is not exclusive. The common law methods of executing such deeds are still valid.

BARCELLO *v.* HAPGOOD.

15. A corporation's deed for realty may be executed by any agent having authority from the company to represent it for that purpose.

16. Acts of corporate or state officials purporting to be done by virtue of their offices are taken to be correct and are *prima facie* valid and true.

17. The great seal of this or one of the other states of the Union requires no proof.

18. The charter of a foreign corporation may be proven in this State by exhibiting a copy duly certified by the Secretary of State of the state in which the corporation was created.

19. Where a vendor in a contract to convey land has only a defective title, and his vendee buys up the outstanding claims for the purpose of forestalling such vendor and preventing his complying with his contract, such vendee can only recover what he actually paid for the outstanding claims.

20. "Broadside" exceptions to the judge's charge and the judgment as rendered will not be considered.

21. A State grant should be recorded without farther proof than the Great Seal of the State being affixed to it.

CIVIL ACTION, tried before *Timberlake, J.*, at Spring Term, 1985, BURKE Superior Court.

The action was brought to rescind a contract to purchase land, because of alleged defects in the title of the vendor, and recover the portion of the purchase-money already paid.

The tracts of land covered by the contract to convey consist of one three-hundred-acre tract, one twenty-two-and-one-half-acre tract, one one-hundred-acre tract, one seventy-eight-and-one-third-acre tract, and one eight-acre tract. There was no dispute as to the seventy-eight-and-one-third-acre tract, or the twenty-two-and-one-half-acre tract; the controversy was solely as to title to the three hundred acres, the one hundred acres, and the eight acres.

In order to show he was able to comply with his contract to convey to the three tracts in dispute, the defend

ant introduced a grant from the State to one KcKlesky, dated March 15th, 1780.

This grant was objected to on the ground that it was registered without being proven before the clerk, or by him ordered to be registered. Objection overruled. Exception.

This grant proposes to convey three hundred acres of land in Burke county, on the waters of Silver Creek.

The defendant next offered a deed from C. L. S. Corpening, late Clerk and Master in Equity for McDowell county, to Christiana J. and Huldah E. Pearson, dated April 19, 1871.

The defendant next offered a deed from Christiana J. and Huldah E. Pearson, by their guardian, Rachel W. Pearson, and by Rachel W. Pearson in her own right. [Objected to, for want of power in Rachel W. Pearson to convey as guardian, and for want of proper probate and registration. Overruled. Exceptions by plaintiff.]

The certificate of probate and registration is as follows :

"NORTH CAROLINA—BURKE COUNTY.

"I, J. H. Hallyburton, Clerk of the Superior Court, do hereby certify that B. S. Gaither, the subscribing witness, appeared before me this day, and the due execution of the annexed deed was duly proven by him. Let the same, with this certificate, be registered.

"Witness my hand and seal, this 29th day of May, 1880.

"J. H. HALLYBURTON, Clerk."

(Seal of Court.)

"4. The defendant next introduced deed from L. S. Hapgood to Hancock Gold Mining Company, dated July 3, 1880. [Objected to on the ground that no power in the Hancock Gold Mining Company to hold lands had been

shown, or that there was any Hancock Gold Mining Company.   Objection overruled.   Exception.]

" 5.  The defendant next introduced power of attorney by Hancock Gold Mining Company to L. S. Hapgood, its treasurer, to convey their lands, dated July 11, 1883.

" 6.  Next introduced deed from Hancock Gold Mining Company to C. C. Barton, executed by said company through its agent, L. S. Hapgood, dated June 15, 1888. [Objected to for the same reason as Number 4.   Overruled.   Exception by plaintiff.]"

This deed purports to be executed by the Hancock Gold Mining Company, under its seal, by L. S. Hapgood, Treasurer.   The certificate of probate is as follows:

" COMMONWEALTH OF MASSACHUSETTS,

" SUFFOLK, s. s., July 6, 1888.

" Then personally appeared the above-named, L. S. Hapgood, Treasurer, and acknowledged the foregoing instrument to be the free act and deed of the Hancock Gold Mining Company before me.

(Seal)                         JOSEPH A. WILLARD,
                         " *Clerk of the Superior Court.*"

On the left of the signature is the seal of superior court affixed.

The following is the certificate of the superior court of Burke county:

" NORTH CAROLINA—BURKE COUNTY.

" The foregoing certificate of Jos. A. Willard, clerk superior court of Suffolk county, Mass., is adjudged to be correct.   Let the deed and this certificate be registered.

" July 17th, 1888.

                         " S. F. PEARSON,
                         " *Clerk Superior Court.*"

"BURKE COUNTY.

"Filed for registration on the 17th day of July, 1888, and registered in the office of the register of deeds for Burke county, N. C., on the 17th day of July, 1888.

"J. L. J. ESTES,
"*Register of Deeds for Burke County.*"

[Clerk will copy power of attorney to L. S. Hapgood above and mark "Exhibit F."]

Next introduced deed Hancock Gold Mining Company to C. C. Barton, September 1, 1893. Objected to for the reason that the Hancock Gold Mining Company had no right to convey land. Overruled and exception.

"8. Next introduced deed from C. C. Barton to L. S. Hapgood, June 15, 1888." [Objected to for want proper registration and probate. Overruled and exception.]

The certificate of probate is in the following words and figures:

"COMMONWEALTH OF MASSACHUSETTS,
"SUFFOLK COUNTY, s. s., July 6, 1888.

"Then and there personally appeared the above-named Charles C. Barton, and acknowledged the foregoing instrument to be his free act and deed before me.

"JOSEPH A. WILLARD,
(Seal)                "*Clerk Superior Court.*"

On the left side of the signature is the seal of the superior court affixed.

The following is the certificate of the clerk of the superior court of Burke county:

"NORTH CAROLINA—BURKE COUNTY.

"The foregoing certificate of Jos. A. Willard, Clerk of the Superior Court of Suffolk county, Mass., is adjudged to be correct. Let the deed and certificate be registered.

"S. T. PEARSON,
"*Clerk Superior Court of Burke County.*"

The certificate of registration is as follows ;

" Filed for registration on the 17th day of July, 1888, and registered in the office of the register of deeds for Burke county, North Carolina, on the 17th day of July 1888, in book ' P,' page 56, 57.

" J. L. J. ESTES,

" *Register of Deeds for Burke County, N. C.*"

Next introduced record of special proceedings in the case of Christiana J. and Hulda E. Pearson by their guardian Rachel Pearson (*ex parte*) in which the petition set forth that the petitioner Rachel, as widow and the infant petitioners, Christiana and Hulda, as the only heirs-at-law of Patton Pearson were the owners of certain lands (described) and that they had been offered $1,400 in cash for the land by L. S. Hapgood of Boston ; that it was to the interest of all parties to sell, &c., and praying the court to order a sale of the lands by a commissioner after enquiry and report as to the value of the lands, &c. The record also showed a report by a commissioner as to the value of the lands and a recommendation that a sale should be made, the facts contained in the report being set out in the decree. The report was filed May 19, 1880, and confirmed on same day by the clerk. The record of said special proceedings also contained the following decree signed by *Judge Gilmer* :

DECREE.

This case coming on to be heard before *John A. Gilmer*, one of the judges of the superior courts of the State, now holding the several courts of the Eighth Judicial District, *at Chambers*, and being heard upon the petition and exhibits, the former order of the court, the report of the commissioner, G. P. Erwin, and the [report] on file. The court doth find and declare the facts to be :

" 1. That the petitioners are tenants in common of the land described in the petition; that the petitioner, Rachel W. Pearson, is entitled to dower in the said lands, and has title to two-thirds of the mineral interest therein in fee-simple; that the petitioners, Christiana J. Pearson and Hulda E. Pearson, are entitled to all the land and one-third the mineral interest in fee-simple, subject to the dower of the said Rachel W. Pearson, during her life; that the value of interest of Rachel W. Pearson is ·equal to the one-half of the present value of the land and all the minerals therein; and that the value of the present interest of the said Christiana J. and Hulda E. Pearson, jointly, is the one-half of the value of the land and all the minerals therein; and that the value of the lands is eight hundred dollars; that the said Christiana J. is nineteen and the said Hulda E. Pearson is seventeen years of age, and are infants; that the petitioner, Rachel W. Pearson, their mother, has been duly appointed their guardian. That the said Rachel W. Pearson, for herself and in behalf of her said wards, has made a contract to sell all the said land at the price of fourteen hundred dollars in money in hand paid, has entered into a written contract with Lyman S. Hapgood, of Boston, in the state of Massachusetts, to that effect, and the court finds the fact to be, and so declares, that the interests of the two minor petitioners, C. J. and Hulda E. Pearson, (as well as that of the petitioner, Rachel W. Pearson,) would be materially promoted by a sale of said land at the price of fourteen hundred dollars, and the proceeds of the sale partitioned among the petitioners, according to their respective interests, and that part belonging to the said minors.paid into this court, and placed under control of the court, to be invested or loaned as the court may direct.

" It is therefore ordered, adjudged and decreed, that the said Rachel W. Pearson, guardian of the said Christiana J. and Hulda E. Pearson, is authorized and empowered by this court to specifically perform said written contract with said Lyman S. Hapgood upon his paying for said land the sum of fourteen hundred dollars, money in hand; and that she be authorized and empowered to convey all the interest, right, title and claims of her said wards in the said lands in fee-simple, with the usual covenants of warranty; and that said conveyance, made in pursuance of this decree, shall pass the title of the said wards in the same manner, and to the extent as if made by the said Christiana J. and Hulda E. Pearson, in proper person of full age.

" The court doth adjudge that the said purchase-money shall be divided into two equal parts; one part thereof shall be the share of Christiana J. and Hulda E. Pearson jointly, and be paid into this court immediately after the sale of the land; that the same be re-invested, or loaned, to the use and benefit of the said minors as the judge of this court may specify and order; and it is further ordered that this case be retained for further orders. It is adjudged that the petitioner, Rachel W. Pearson, pay the cost of this proceeding out of her part of the proceeds of such sale, and that Geo. P. Erwin, the commissioner, be allowed $5 for taking the testimony, and making his report 24th May, 1880.

"JOHN A. GILMER,

" *Judge Fifth District, Presiding in*

" *Eighth Judicial District.*"

REPORT OF RACHEL PEARSON.

Rachel Pearson, guardian of her two daughters, C. J. and Hulda E. Pearson, has the honor to report to this

court, that she, as guardian of her said wards, and in her own behalf, has specifically performed the written contract entered into with Lyman S. Hapgood, on the 29th day of April, 1880, in behalf of herself and in behalf of her said wards by selling and conveying to the said Lyman S. Hapgood the lands described in the proceedings in this case under and in pursuance of the former order of this court, having received in payment for said land the sum of fourteen hundred. dollars of money in hand paid, one-half of which is the money due my wards for their interest in said lands ; and I do now return and pay into this court, for the use and benefit of my said wards, the sum of seven hundred dollars ($700), agreeable to the order of this court, made in this case, this 29th May, 1880. (Signed by Rachel W. Pearson.)

RECEIPT OF CLERK.

" The within report on this 31st day May, 1880, was returned into court, and the sum of $700 paid into court by Rachel W. Pearson, guardian of her wards, C. J. and Hulda E. Pearson, for their use and benefit, to be invested by the order of this court for them, agreeable to the former order made by the judge of this court, and the clerk of this court has given his receipt for the same, this 31st May, 1880.

" J. H. HALLYBURTON,
" *Clerk Burke Superior Court.*"

Next introduced grant from the State to James Green-lee, James and William Erwin, dated December 7, 1795.

Next introduced deed from George P. Erwin, trustee, to Hancock Gold Mining Company, covering the eight-acre tract, and it was admitted that G. P. Erwin, as such trustee, had power to convey the title to lands belonging to the heirs of the said Greenlee and the said Erwin within

118—46

boundary of this grant. There was evidence that the eight-acre tract was within the boundaries of this grant.

Next introduced grant from the State to J. H. Hall, dated November 25, 1853, covering one hundred acres.

Next introduced deed from James Terry and wife to L. S. Hapgood, dated July 23, 1880.

Next introduced letters of incorporation of the Hancock Gold Mining Company, with certificate by the Secretary of State for Maine, as follows :

" CERTIFICATE OF ORGANIZATION OF A CORPORATION UNDER THE GENERAL LAW.

" The undersigned, officers of a corporation organized at Portland, in the county of Cumberland and state of Maine, at a meeting of the signers of the articles of agreement therefor, duly called and held at No. 93 Exchange, in said Portland, on Saturday, the 19th day of June, A. D. 1880, hereby certify as follows :

"The name of said corporation is the Hancock Gold Mining Company. The purposes of said corporation are the mining and milling of gold and other minerals, and especially the mining and milling of gold and other minerals in Silver Creek township, Burke county, and State of North Carolina.

" The amount of capital stock is three hundred thousand dollars, and is paid in full, and the shares thereof are to be forever non-assessable. The par value of a share is ten dollars.

" The names and residences of the owners of said shares are as follows :

" Lyman S. Hapgood, Boston, Mass., ten thousand.

" John F. Eldridge, Boston, Mass., ten thousand.

" Alpheus P. Blake, Boston, Mass., ten thousand.

" Said corporation is located at Portland. The number of directors is three, and their names are  Lyman S. Hapgood, John F. Eldridge and Alpheus P. Blake. The undersigned, John F. Eldridge, is President; the undersigned, Lyman S. Hapgood, is Treasurer, and the undersigned, John F. Eldridge, Lyman S. Hapgood and Alpheus P. Blake, are a majority of the directors.

"Witness our hands, this 19th day of June, A. D., 1880.

JOHN F. ELDRIDGE,
*President and Director.*
LYMAN S. HAPGOOD,
*Treasurer and Director.*
ALPHEUS P. BLAKE,
*Director.*

" CUMBERLAND—ss                    June 19, A. D. 1880.

"Then personally appeared John F. Eldridge, Lyman S. Hapgood and Alpheus P. Blake, and made oath that the foregoing statement, by them subscribed, is true.

Before me :                      A. J. BRADSTREET,
*Justice of the Peace.*"

STATE OF MAINE,
*Attorney General's Office,*
June, A. D. 1880.

"I hereby certify that I have examined the foregoing certificate, and the same is properly drawn and signed, and is conformable to the Constitution and laws of the State.

HENRY B. CLEAVES,
*Attorney General.*"

" STATE OF MAINE,
*Office of Secretary of State.*

"I hereby certify that the foregoing is a true copy from the records of this office. In testimony whereof I have caused the seal of the State to be hereunto affixed.

BARCELLO v. HAPGOOD.

"Given under my hand at Augusta,this sixth day of February, in the year of our Lord one thousand eight hundred and ninety-four, and in the one hundred and eighteenth year of the Independence of the United States of America.

J. J. CHADBOURNE,
(Official Seal)             *            *Secretary of State.*"

[Objected to by the plaintiff for defective certificate, and there was no power conferred in the certificate upon the alleged corporation to hold and convey land described in the deeds to and from it. Objection overruled and exception by the plaintiff.]

For the purpose of showing the unequitable conduct of the plaintiff towards her bargainor, the defendant, by her agent, copartner and co-plaintiff, the defendant introduced a *tri-partite* contract between the plaintiff, J. C. Landreau, Rev. Father Crowly and Mrs. Barcello. (See Exhibit B.) Also affidavit of Landreau, showing that he was a party in interest. (Exhibit C.)

[Plaintiff objects ; overruled; exception.]

These exhibits are omitted here because the purport of this evidence is sufficiently stated in the opinion.

Plaintiff introduced no evidence. There was a verdict and judgment for defendant, and plaintiff appealed and assigned as errors as follows :

" 1st. Admission of improper testimony.

" 2d. Refusal to give instructions asked for by plaintiff.

" 3d. For error in instructions given.

" 4th. To the judgment."

As these assignments of error are held to be too vague and indefinite, as far as the judgment and instructions are

BARCELLO v. HAPGOOD.

concerned, and the judge's charge and prayers for special instructions are not passed upon by the court, they are omitted.

Messrs. Cilley & Hufham, for plaintiff (appellant).
Messrs. P. J. Sinclair and Isaac Avery, for defendant.

AVERY, J.: The action was brought to rescind a certain contract whereby the defendant Hapgood covenanted to convey to the plaintiff, Francis A. Barcello, 550 acres of land in Burke county known as "Hancock Gold Mine," on account of defect of defendant's title, and for the recovery of two thousand dollars, purchase-money, already paid by the plaintiff and the amount expended in improvements on the land, less the profit realized from working a gold mine thereon. The defendant denied the allegations. The controversy has narrowed down to the question whether the defendant could make a good title to three out of the five tracts of land described in the contract, to-wit, the three-hundred-acre-tract, the one-hundred-acre-tract and the eight-acre tract.

The title deeds, which gave rise to the exceptions as to form of probate and power of agents to execute, were those offered by the defendant Hapgood to show that he was able to specifically perform his contract. "It is usual," said the Court in Rowland v. Thompson, 73 N. C., 504, "for sales made by order of the Court of Equity to be public sales; but the court, as the guardian of infants, has full power in regard to the mode of sale, and, under special circumstances, not only has power but should, in the exercise of its discretion, authorize and confirm what is called a private sale; that is, a sale without advertisement and public outcry." It is settled by a number of adjudications " that The Code has not taken away from the supe-

rior courts the jurisdiction heretofore exercised by Courts
of Equity. *Wadsworth* v. *Davis*, 63 N. C., 251; *Wilson*
v. *Bynum*, 92 N. C., at p. 717; *Clement* v. *Cozart*, 107
N.C., 695; *State & Guilford Co.* v. *Ga. Co.*, 112 N. C.,
34.

In 1880, when Rachel Peaison, as guardian of her
infant children, filed the petition before the clerk of the
superior court, he was acting in the capacity of probate
judge and authorized to take jurisdiction of the special
proceeding, under what is now Section 1602 of *The Code*,
which, since the enactment in its present shape in 1885,
confers the same authority on him as clerk. But though
he could take cognizance of it, his right to do so was not
exclusive, but, under the rule laid down in the cases
already cited, concurrent with that of the superior court
in the exercise of the powers of a Court of Equity. The
superior court had general jurisdiction both of the persons
who were parties, and the subject matter of such a pro-
ceeding, it being equitable in its nature, (*Houston* v.
*Houston*, Phil. Eq., 95 *Ex-Parte* Dodd, *Ibid.*, 97; *Har-
rison* v. *Bradley*, 5 Ired. Eq., 136) and a third person pur-
chasing in good faith at a sale made under the decree of the
superior court, signed by *Judge Gilmer*, and relying upon
the stability of that judgment, got a good and indefeasible
title. *Sutton* v. *Schonwald*, 86 N. C., 203; *England* v.
*Garner*, 90 N. C., 197; *Branch* v. *Griffin*, 99 N. C., 173;
*McIver* v. *Stephens*, 101 N. C., 255. The purchaser was
not bound to look behind the judgment of the higher
court and pass upon the irregularity, if the signing of the
decree of sale upon the coming in of the report of the
referee, by the judge of the superior court instead of by
the judge of probate, subject to the approval of his
superior, was in fact not in accordance with the regular
course of the court. The sale was not only made

under an order of a court having general jurisdiction both of the parties and the subject matter, but it was made after careful inquiry by a referee, and a report by him that the interest of the infants would be promoted by a sale. *Harrison* v. *Bradley, supra.* The making by the probate judge of an order confirming this report on its coming in, instead of making the order of sale, was but an irregularity which does not subject the proceeding to collateral attack, and which, if a direct attack was made, would not affect the validity of the title acquired under the decree, if the purchaser were a stranger to the record. Section 1590 of *The Code* is the Act of 1794, Ch. 413, Sections 1 and 2, and has been in force since its first enactment, (Rev. Statutes, Ch. 54; Rev. Code, Ch. 54, Sec. 26; Bat. Rev., Ch. 54, Sec. 27,) and being a part of the statute law, it is manifest that the court has always construed it as referring to sales other than judicial. It was intended as a restriction upon the discretionary power of the guardian, not upon the authority of a court of chancery having the supervision and oversight of their conduct. The evil intended to be remedied by the statute was not the abuse of power by the court, but by guardians when not acting under the restraint of its orders.

The statute (*Code*, Sec. 640) confers upon clerks of courts of record in other states the powers both of commissioners affidavits and of deeds, and of commissioners regularly appointed by the courts, and the courts will take judicial notice of their seals. *Hinton* v. *Ins. Co.*, 116 N. C., 22. Commissioners of affidavits are empowered, under Section 632 of *The Code*, to take acknowledgments of deeds in other states by residents both of this State and of that for which such commissioners are appointed. *Buggy Co.* v. *Pegram*, 102 N. C., 240. Willard, the clerk of Suffolk court, therefore, had authority to take the probate, and

upon the adjudication by the clerk of the superior court of
Burke county that it was correct, it was properly admitted
to registration, *Buggy Co.* v. *Pegram, supra.* For the
same reason the same clerk was empowered to take the
acknowledgment of the grantor Barton to Hapgood, and it
is needless to cite authority to show that the acknowledg-
ment that the "foregoing instrument was his free act and
deed" was sufficient in law. The certificate of Hallybur-
ton, clerk, that B. S. Gaither, the subscribing witness,
appeared before him, "and the due execution of the annexed
deed was duly proven" by him, was also sufficient to author-
ize the order of registration and the recording of the deed.

While a foreign corporation is not authorized to exercise
powers in another state not granted in its charter, (*Dia-
mond Match Co.* v. *Powers,* 51 Mich., 145 ; *Bank* v. *God-
froy,* 23 Ill., 579,) yet where the privilege of holding real
estate is therein conferred, it may, under the rules of comity,
buy, hold and sell land to the same extent that domestic cor-
porations are authorized to deal in it, and, whether foreign
or domestic, if authorized to hold land at all, they have all
of the powers of an individual in relation to it, except in
so far as they are expressly restricted by law. *Lancaster* v.
*Improvement Co.,* 24 L. R. A., and note—140 N. Y., 576 ;
*Com.* v. *Railroad,* 15 Am. St. Rep., 724, and note—129
Pa. St., 463 ; *Blair* v. *Ins. Co.,* 47 Am. Dec., 129, and note—
10 Mo., 559 ; *Ducat* v. *Chicago, &c.,* 95 Am. Dec., and note—
48 Ill., 172 ; 6 Morawitz Pr. Corp., Secs. 960 to 965. The
corporation was created for the purpose of "mining and
milling of gold and other minerals, especially in Silver
Creek township, Burke Co., N. C.," where it appears that
the company is operating. It is a familiar rule, applica-
ble to both public and private corporations, that, while the
grants of authority from the state to them are construed
strictly, they can nevertheless exercise not only the powers

expressly given and such as are fairly implied in or incident to those given, but such as it is indispensably necessary to exercise in order to the enjoyment of the privileges expressly given. In other words, the authority to use the means necessary to attain the main objects for which they are formed must be supplied by implication. 1 Morawitz, *supra*, Sec. 320 ; 1 Spilling Pr. Corp., Secs. 63, 83. A corporation has the implied right to acquire and hold not only such property real or personal, as may be actually necessary for carrying on the business for which it was formed, but such as may be reasonably expected to prove useful and convenient in attaining its legitimate ends. 1 Morawitz, *supra*, Sec. 327. The general rule is that foreign corporations may acquire real and personal property, such as tracts of land for the purpose of mining, as in this case, like domestic corporations, where it is necessary or convenient in carrying out the express purposes for which they were created. 2 Morawitz, *supra*, Sec. 961. It is manifest that a company formed for the purpose of mining and milling would find it convenient, if not absolutely essential, to buy the land upon which it proposes to conduct its business, and where the acquisition would prove useful, in the absence of any law re-enacting the Statutes of Mortmain in this State, neither domestic nor foreign corporations are prohibited from buying land in furtherance of the objects for which they were created. *Malett v. Simpson*, 94 N. C., 41. Where, however, it is doubtful whether the right to h ld land comes within the purview of its powers, that question can be raised as against any corporation exhibiting title to realty only by a proceeding authorized by the State. *Mallett v. Simpson, supra; Bass v. Navigation Co*, 111 N. C., 439. A private corporation, organized for the benefit of its stockholders, is not restricted by duties to the public, as is a *quasi* public cor

poration, but is authorized to dispose of any of its prop-
erty, real or personal, whenever it may find it expedient to
do so in carrying out its business. 1 Morawitz Pr. C.,
Sec. 335.

A conveyance of the property of a corporation, like that
of an individual, may be executed "through any agent
having authority to represent the company for that pur-
pose." 1 Morawitz Pr. Corp., Sec. 335. Citing *Bason* v.
*Mining Co.*, 90 N. C., 417, and *Morris* v. *Keel*, 20 Minn.,
531, Morawitz says (in the section last cited) that a statu-
tory method of alienation by corporations like that pro-
vided by statute in North Carolina (*The Code*, Section 685)
is not exclusive of the common-law mode of conveyance,
and does " not prohibit other methods of execution by
authorized agents." The rule as stated by Morawitz is
founded upon the right to dispose of property, which is
always incident to ownership by individuals, and also by
corporations, except in so far as they are restrained by
express statute or by public policy, as where they owe a
duty to the public and the alienation of property may
incapacitate them for its performance. 1 Beach Pr. Corp.,
Sec. 357 ; *Logan* v. *Railroad*, 116 N. C., 940. The extra-
ordinary powers of a corporation, such as that of selling or
leasing the corporate property, where it exists, belongs
primarily to the stockholders, (1 Beach, *supra*, Sec. 73,)
but may be delegated by them, as it can be by an individ-
ual, to the directors or to an agent designated in the reso-
lution of the body, either by his official title or his name.
1 Morawitz, *supra*, Sec. 325. The resolution of the cor-
poration was in the nature of a power of attorney to con-
vey land, and therefore it was proper to prove and register
it in this State. The signature of the secretary who is the
proper officer to affix the seal where no special authority
to do so is conferred on another, was acknowledged by

him.    The resolution, certified to be a part of the min-
utes, is therefore *prima facie* the act of the corporation..
4 Thompson Corp., Secs. 5054 and 5055 ; *Duke* v. *Mark-
ham*, 18 Am. St. Rep., 889, and note—105 N. C., 137.
The law assumes that the proper officer did not exceed his
authority, (*Morris* v. *Keel, supra*), and that the certificate
of the genuineness of the extract from the proceedings is.
true.    *Railroad* v. *Lea*, 12 La. Ann., 388.    The Great
Seal of the State of Maine requires no proof of its genu-
ineness, (1 Greenleaf Ev., Sec. 475,) and the certificate of·
the Secretary of State that a certain paper is a record in
his office, when attested by the seal, must be accepted as at
least *prima facie* true, because such a public officer is pre-·
sumed to act in accordance with law in assuming the cus-
tody of records.    The law of disputable presumptions rests
upon the experience of a connection between the existence·
of certain facts and the accepted opinion that in a vast
majority of instances the existence of one such fact may
be reasonably inferred from proof of the other.    1 Green-
leaf, *supra*, Sec. 33.    It appearing by a genuine certificate
that the paper was placed in his custody as an official
record, the presumption arises that he, as a public officer,.
has, in assuming control of such record, done what the law
required ; (Lawson on Ev., p. 63, Rule 14,) and that he is.
therefore the proper and legal custodian of it.    It was not
necessary under the circumstances to offer in evidence
either a certified copy, or copy purporting to have been
printed by authority of the state, of the statute constitut-
ing him custodian, when that fact must be assumed from
what was already proved.    While such printed copies are
made competent by statute in most of the states, and while,
according to what is probably the more correct view of the
law, they are admissible even under the common-law
principles of evidence, (*Watkins* v. *Holdman*, 16 Peters,.

25,) it does not follow that no conceivable combination of. facts will raise a presumption of the existence of a statute legalizing the act of a public officer and dispensing with the necessity for the production of a copy with evidence of its genuineness. The certificate is sufficient of itself to shift the burden of proof as to the custody of the record, and, conceding that it is shown to be a record, the certificate of the Attorney General constitutes a part of it and shows that he examined the certificate of organization of the corporation, and decided that it was in all respects in conformity with law. It is familiar learning, for which it is needless to cite authority, that the certificate of the Secretary of State of North Carolina, attached to a grant of land and attested by the Great Seal of the State, is sufficient evidence of its official character to warrant its registration without further proof. *Code,* Sections 2779 and 2781.

The testimony of Cooper and the England deed tended to show a collusive combination to avoid the performance of the contract by forestalling the defendant in buying up a title, and preventing him from perfecting his own, as he had a right to do. *Westall* v. *Austin,* 5 Ired. Eq., 1. Plaintiff could ask nothing more than the expense incurred, and this she has not done. *Kindly* v. *Gray,* 6 Ired. Eq., 445. The " broadside " exceptions to the judgment and to the instruction are not sufficiently specific and will not be considered. We have carefully considered such assignments of error as have any merit, and conclude that the judgment must be affirmed.

Affirmed.