WORTH MFG. CO. et al. v. BINGHAM et al.

(Circuit Court of Appeals, Fourth Circuit. June 12, 1902.)

No. 445.

1. CORPORATIONS—SUIT BY STOCKHOLDERS—APPOINTMENT OF RECEIVERS AND GRANTING OF INJUNCTION.

A bill by minority stockholders of a private corporation against the corporation, which alleges that it is insolvent or in imminent danger of insolvency, gross mismanagement, inefficiency and inattention on the part of the managing officers, resulting in great loss to the stockholders, and that the managing officers had perpetrated a fraud on complainants and the other stockholders in the purchase of property owned by certain of such officers, and which prays for a dissolution of the corporation, the appointment of a receiver and for an injunction restraining the officers and agents of the corporation from interfering with his management of the property, but to which no creditor is made a party, which does not allege that any debts are due and unpaid, or that creditors are pressing their demands, and which shows that the purchase of the property objected to was made pursuant to a vote of the stockholders, states no facts showing danger of irreparable injury from delay, such as to warrant the court, under Rev. St. § 718, in granting an injunction, or in appointing receivers, without notice to the defendant.

2. SAME—BILL TO SET ASIDE PURCHASE OF PROPERTY—EQUITY RULE 94.

Where such bill was amended by making the former owners of the property purchased by the corporation parties defendant and attacking the validity of the purchase, it came within the operation of equity rule 94, as one founded upon a right existing in favor of the corporation; and under such rule it was not maintainable, in the absence of statements therein setting forth with particularity the efforts of the plaintiffs to secure such action as they desired on the part of the managing directors and the shareholders, and the causes of their failure to obtain such action.

3. SAME—GROUNDS FOR APPOINTMENT OF RECEIVER.

Insolvency alone will not authorize the appointment of a receiver for a private corporation at suit of a minority stockholder, but, to warrant such appointment, the insolvency must have been brought about by the fraud or gross mismanagement of the officers or directors of such a character as to create a clear necessity for the interference of the court to protect the interests of stockholders.

4. SAME.

A court appointed receivers for a private corporation, and granted an injunction at suit of a minority stockholder, without notice to the corporation, on the ground of insolvency and fraud and mismanagement on the part of the managing officers. The defendant answered, denying all such allegations, and moved for a discharge of the receivers and a dissolution of the injunction. A report of the receivers placed the value of the property of the corporation at nearly double the amount of its liabilities. No creditor joined in asking the appointment of the receiver, but, on the contrary, it was shown that nearly all the creditors and a large majority of the stockholders opposed the receivership. The alleged fraudulent action of the officers, which consisted in the purchase of property owned by two of the directors, was shown to have been taken pursuant to the unanimous vote of the stockholders present or voting at a meeting called to consider the purchase. The charges of mismanagement were also controverted by affidavits showing that the corporation had been prosperous until the year preceding the suit, and that its losses during that time were due, in part at least, to general business conditions. *Held*, that under such showing it was error to continue the receivership or the injunction.

¶ 3. See Corporations, vol. 12, Cent. Dig. § 2203.

116 F.—50

**5.** SAME—DISSOLUTION—BILL BY MINORITY STOCKHOLDERS.

A bill by minority stockholders of a private corporation praying its dissolution on the ground of insolvency and that its business is being carried on at.a loss, but which does not allege any act which is illegal, fraudulent, or ultra vires, nor show any action on the part of plaintiffs to induce a change of management either by the officers or stockholders, does not present a case for equitable relief, nor authorize a circuit court of the United States, in the absence of statute, to take the property of the corporation from its possession and management.

**6.** APPEAL—REVIEW OF INTERLOCUTORY ORDER—POWER TO DIRECT DISMISSAL OF BILL.

On appeal from an interlocutory order granting or continuing an injunction the appellate court may direct the dismissal of the bill, where it is found to be without equity to support it.

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

This case comes up on appeal from the decree of the circuit court of the United States for the Western district of North Carolina. The Worth Manufacturing Company is a private corporation created by the laws of the state of North Carolina, engaged in the business of cotton manufacturing. The corporation was organized on 1st May, 1889. The capital stock was 2,000 shares of $100 each, in all $200,000, of which $160,000 was paid in and $40,000 were stock dividends. On the 14th December, 1901, Robert W. Bingham, with Mary B. McKee and her husband, Reid McKee, holding between them 40 shares, filed their bill in behalf of themselves and all other stockholders against the Worth Manufacturing Company. The bill, sworn to by Robert W. Bingham only, charges that for· a number of years after its organization the Worth Manufacturing Company was managed with a fair measure of success, but that now it has become insolvent, or, if not insolvent, so unproductive and embarrassed as to be in imminent danger of insolvency, utterly unable to continue its business and carry out the purposes of its organization, and, if allowed to continue in business, the corporation will become hopelessly and irretrievably insolvent; that the capital stock paid up is $160,000; that the available assets of the corporation of all kinds cannot be made to realize more than $120,000, whilst its debts on 30th September, 1901, amounted to $124,647.50, and since that day the indebtedness has largely increased, all of which is now due or will become due within the next 90 days. The bill then alleges that since October, 1900, the board of directors of the Worth Manufacturing Company consisted of Hal M. Worth, J. S. McAlister, A. W. McAlister, C. C. McAlister, J. W. McAlister, R. G. Glenn, C. W. Worth, and Mrs. A. H. Worth; that the four McAlisters are brothers, and are first cousins of Hal M. Worth, who is president; that the president resides in Washington, D. C., C. C. McAlister in Asheboro, N. C., where he is president of a lumber company, J. S. McAlister resides in Rockingham county, N. C., C. W. Worth resides in Wilmington, N. C., Mrs. Alice H. Worth resides in Asheboro, N. C., A. W. McAlister and R. G. Glenn reside in Greensboro, N. C.; and that the mill is left to the management, control, and operation of J. W. McAlister, a young man about 27 years of age. The bill also charges that the directors contracted to purchase the Engleworth Mills, a worthless piece of property, owned by Hal M. Worth and J. S. McAlister, the one being the president and the other a director of the Worth Manufacturing Company; that they submitted the purchase to a called meeting of stockholders. and that the purchase was ratified by a vote of those present and of proxies of those absent. A large, and perhaps a controlling, vote on said ratification consisted of the votes cast by these same directors on their own stock and on proxies held by them; that since said purchase the said Engleworth Mills have been operated at a great loss, and the whole transaction has amounted to a palpable waste of the assets and a misappropriation of the funds of the Worth Manufacturing Company by its officers .and directors, particularly the said Worth and McAlister. The bill prays a decree that the Worth Manufacturing Company

be declared insolvent, and that it be dissolved by an order of this court; that, after taking an account of its assets and liabilities. it be wound up, and that a receiver be appointed, with the corresponding injunction against any interference by the officers and agents of the corporation. Upon the filing of this bill, without other verification except the oath of Robert W. Bingham, and without other proof of the facts alleged, and without notice to the respondents, or any of them, a decree was entered declaring that the complainants were entitled to the relief demanded, an injunction was issued in accordance with the prayer of the bill, and John H. McAden and William H. Ragan were appointed receivers, with instructions that, after giving bond in the sum of $20,000, they take possession of all of the assets of the corporation, with authority to employ such clerical aid as they find necessary and to obtain such legal counsel as the attorney appointed in the same order may give them. The decree adds: "It is further ordered and decreed that this injunction and the appointment of receivers be made permanent until the further order of the court, and that, in case a motion be made to vacate the receivership and injunction, it shall be only after twenty days' notice to the complainants." The receivers took charge, and on 17th December next after the filing of the bill, on their petition, were authorized to pledge the finished products of the mills in order to secure advancements for the purpose of paying for cotton necessary to run the mills, and for past-due and future wages of employés, and other expenses of the mills; and on the same day an order was passed requiring all creditors to exhibit their claims. On 30th December the receivers were authorized to insure the property. On 9th January, 1902, an order was passed making three infants, Sallie, Evelyn, and Fred. Boyd, parties plaintiff in the suit by prochein ami, D. H. Collins, their trustee, having refused to apply to be made party complainant; and on the same day Sadie Bingham Grinnan, Lizzie E. Crocker, and Roberta Collins were made also parties complainant, and all of the directors, together with the Southern Loan & Trust Company, trustee for the minors above mentioned, and also the Englewood Mills, were made, by an amendment to the bill, parties defendant. On 21st December, 1901, the Worth Manufacturing Company gave notice of a motion for the dissolution of the order appointing receivers and granting the injunction, motion to be heard on 10th January next thereafter. This motion was continued to the rules day in February, with leave to file affidavits. On 10th January, 1902, the answer of the Worth Manufacturing Company was filed. The main features of the answer are averments that up to October, 1901, the Worth Manufacturing Company had done a successful business; a positive denial that the company is insolvent or in any danger of insolvency; that its assets are worth $425,000, greatly exceeding its liabilities; avers that the directors own or control 1,623 shares of capital stock out of 2,000 shares. The answer denies all the allegations as to the Engleworth Mills. It avers that its original cost to Hal M. Worth and J. S. McAlister and the other purchasers of the Engleworth Mills was $9,550, and that it had been added to and improved; that it had been successfully operated up to the date of the sale, and that it had been used by the Worth Manufacturing Company and other mill companies as a weave mill; that a proposition had been made by third parties, competitors of the defendant company, to purchase the Engleworth Mills for $11,000, and the defendant offered $11,100; that at a regular meeting of the stockholders the proposition to buy these mills was discussed, and a committee was appointed to consider the purchase; that this committee reported to the directors recommending the purchase; that the directors called a special meeting of the stockholders to consider this report; that all stockholders were notified to attend this meeting, and every stockholder, including the complainants, was served with the notice, in which notice the purpose of the meeting was stated; that the meeting was held, and the purchase approved by unanimous vote, a quorum voting. They absolutely deny that there was any fraud in this transaction, or any want of care for the interests of the stockholders, or that the Engleworth Mills were not worth the sum paid for them. The answer admits loss in business for the past year, and avers that this was one of the vicissitudes of trade. On 10th January, 1902,—the same day on which the answer of the Worth Manu-

facturing Company was filed,—leave was granted to the original complainants to amend their bill by adding an additional paragraph as follows: "That the complainants were shareholders at the time of the transaction of which they complain, and that this suit is not a collusive one to confer on this court jurisdiction of a case of which it would not have cognizance, but that the same is brought in good faith, and for the purpose set forth in the bill." All the parties made defendant filed their several answers, concurring with the answer of the Worth Manufacturing Company. To each of the answers the complainants file separate replications. On 10th January, 1902, the Worth Manufacturing Company filed its motion to vacate the receivership and dissolve the injunction on various grounds, accompanied by numerous affidavits. This motion was refused. The receivership was confirmed, and the injunction continued of force. An appeal was allowed, and the cause is here on 12 assignments of error.

James T. Morehead, James H. Pou (King & Kimball and B. F. Long, on the brief), for appellants.

Charles Price and John N. Staples, for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

PER CURIAM. The bill, as originally filed, upon the filing of which receivers were appointed and placed in charge of the whole property of the Worth Manufacturing Company, was filed by a minority of stockholders in a corporation wholly private, incorporated for the purposes of gain only. It set out no oppression of the minority, no disregard of their interests specially, nor were there allegations of fraud against the majority in their conduct of the affairs of the company. The chief ground of complaint was the purchase of the Engleworth Mills at a price beyond their value, alleged to have been brought about by the contrivance of two directors, but sanctioned by the unanimous vote of the stockholders. Because of this purchase and the alleged total insolvency of the corporation, they pray its dissolution, the winding up of its affairs. To this end the receivership is prayed. No creditor is made a party. There is no allegation that any debts are due and unpaid. There is not a charge that any creditor is pressing for his claim. There is no allegation in the bill, and no evidence in the record, that the minority stockholders had made any effort within the corporation to impress their views upon the majority, or to induce any change in the management of the business interests of the corporation. By their own statement of the complete insolvency of the corporation, they showed that their interest in it was gone, and that the corporation has no other duty than to administer a trust fund for its creditors, who had not been consulted, and were not made parties to the scheme of dissolution.

By equity rule 55 it is provided:

"But special injunctions shall be grantable only upon due notice to the other party by the court in term or by a judge thereof in vacation, after a hearing, which may be ex parte if the adverse party does not appear at the time and place ordered."

It is, however, provided by section 718 of the Revised Statutes:

"Whenever notice is given of a motion for an injunction out of a circuit or district court, the court or judge thereof may, if there appears to be

danger of irreparable injury from delay, grant an order restraining the act sought to be enjoined until decision upon the motion, and such order may be granted with or without security, in the discretion of the court or judge."

The object of a restraining order grantable under section 718 is to preserve matters in statu quo, where there is danger of irreparable injury from the delay incident to giving the notice required by equity rule 55. It is quite apparent that no pressing necessity existed which required the property of the Worth Manufacturing Company to be wrested from its possession, without notice, at the instance of a small number of stockholders alleging, in substance, an improper purchase of a small mill property more than a year before the filing of the bill, and alleging that the welfare of the stockholders required that the management of the corporation should be taken away from those selected by the great majority of its stockholders, and alleging, although a going concern, and not pressed by any creditor, that it was insolvent, or in imminent danger of insolvency, and should be wound up. The granting of the injunction and appointment of receivers without notice was, in the first instance, irregular and improvident. This conclusion is emphasized by the facts disclosed upon the filing of the answers and the return to the rule.

The complainants obtained leave to amend the bill by adding other parties as defendant and by inserting the paragraph above referred to. This was an effort to comply with the Ninety-Fourth rule in equity. Until this amendment, making other parties defendant, was made, perhaps the bill did not come within the operation of the Ninety-Fourth rule. That rule applies only to a bill brought by one or more stockholders against the corporation and other parties, founded on a right which may properly be asserted by the corporation. The bill, in its original shape, was against the corporation only, seeking to wind it up, and so dissolve it. When the amendment was made making the Engleworth Mills a party, then the Ninety-Fourth rule became operative. The prayer to set aside the purchase of this mill because of alleged fraud on the part of two of the directors made the bill one founded on a right which may properly be asserted by the corporation. The Ninety-Fourth rule is imperative. It not only requires an affidavit that the suit is not collusive for the purposes of jurisdiction, but the affidavit must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors, and, if necessary, of the shareholders. The reason for the rule is obvious. The right alleged to be infringed is a right of the corporation. No cause of action exists in any stockholder, and no equity can arise in his favor until he has exhausted his effort to get action on the part of the corporation. "Before a court of equity will interfere and set aside the transactions of a corporation or its directors at the suit of an individual stockholder, grievances, real and substantial, must exist, and he must show that he has exhausted all the means within his reach to obtain, within the corporation, the redress of these grievances." Dimpfel v. Railroad Co., 110 U. S. 209, 3 Sup. Ct. 573, 28 L. Ed. 121. In the case at bar the affidavit carefully omits any such statement. The record shows that the bill was filed without any notice or intimation what-

ever, either of the wrong complained of or of the means taken to prevent it, although the bill shows that complainants had full knowledge of the existence of the cause of complaint some time before they took action.

The bill sets up three grounds upon which it asks the appointment of a receiver, the dissolution of the corporation, the winding up of its affairs, and the injunction. (1) That it is actually insolvent or in imminent danger of insolvency. (2) Gross mismanagement, inefficiency, and inattention on the part of the managing officers, and resulting in great loss to the stockholders, which loss amounted to more than $30,000 during the year 1901. (3) That the managing officers of the Worth Manufacturing Company had perpetrated a fraud upon the complainants and other stockholders by reason of the purchase of the Engleworth Mills.

As to the first ground. The answer and affidavits establish clearly prima facie that the Worth Manufacturing Company is not insolvent. The debts of the company seven weeks after the receivers were appointed, including interest and taxes, on 30th January, 1902, were about $130,000. The receivers, in their report, estimate the property of the corporation at $258,393.91. Other estimates of other parties put the value of the property much higher,—some as much as $425,-000. When it is considered that no creditor has joined in this charge of insolvency, that there is no evidence of any past-due demand unpaid, and that $129,000 out of the $130,000 creditors have in this litigation taken sides with the defendants, the conclusion cannot be resisted that the charge of insolvency is unfounded. And, if it were not unfounded, the insolvency of the company is not in itself a sufficient reason for appointing a receiver for a private corporation. Trust & Deposit Co. v. Spartanburg Waterworks Co. (C. C.) 91 Fed. 324; Lawrence Iron Works Co. v. Rockbridge Co. (C. C.) 47 Fed. 755. The only instances in which the insolvency of a corporation is ground for the appointment of a receiver are when such insolvency has been brought about by the fraud or gross mismanagement of the officers or directors. It must be kept in mind that this is a private corporation, a business enterprise; that it is governed by the votes of its stockholders; that they are the judges, and the best judges, as to the conduct of their own enterprise, and that when the majority adopt in good faith a line of policy which, in their opinion, will best subserve the interests of the enterprise, the minority must yield. Nor does this record disclose such gross mismanagement, inefficiency, and inattention in the conduct of this corporation as will justify taking the property out of its hands and committing it to the management of the court. The first consideration is that nine-tenths of the stockholders and all of the directors approve of the mode in which the corporation has been conducted; that nearly every creditor of the corporation has in writing expressed the desire that the corporation should conduct its business; that up to the last year the corporation has been prosperous, and has made money; that the last year was disastrous, largely, if not entirely, owing to the general depression of business all over the country. Business enterprises must have their vicissitudes. Universal experience shows that a course of uninterrupted prosperity

is of the most exceptional character. If one unfortunate year is sufficient to put a corporation into the hands of a receiver, few corporations could escape.

The most grave charge is that there was fraud in the purchase of the Engleworth Mills. There is no presumption of fraud. The sole question is, does the record disclose a fraud so manifest, a necessity so stringent, as to justify the court in taking possession of this enterprise, winding up its business, and terminating its existence? The Engleworth Mills were owned by Hal M. Worth, the president, and J. S. McAlister, one of the directors, of the Worth Manufacturing Company. They had been used by the Worth Manufacturing Company, in connection with its own output, as a weaving mill. Certain persons had made an offer to purchase the Engleworth Mills for $11,000. The directors of the Worth Manufacturing Company, deeming the Engleworth Mills a valuable adjunct to their own property, were unwilling that they should pass into the hands of strangers, perhaps of competitors. They made the first proposal to the owners of the Engleworth Mills, and offered $11,100 for the property. A meeting of the stockholders was called for the special purpose of considering this proposed purchase, notices having been sent to every stockholder. The meeting was held, and by the unanimous vote of those present and voting the purchase was approved. The Worth Manufacturing Company, under the law of North Carolina, had power to purchase mills, as well as to build them. Mallett v. Simpson, 94 N. C. 42, 55 Am. Rep. 595; Barcello v. Hapgood, 118 N. C. 729, 24 S. E. 124. And the fact that the purchase was made from a company in which a minority of directors in the purchasing company are directors in the selling company does not make the sale invalid. Ziegler v. Railroad Co. (C. C.) 69 Fed. 182; Barr v. Plate Glass Co., 6 C. C. A. 260, 57 Fed. 87. Nor, all other evidences of misconduct being absent, is a stockholder forbidden to vote upon the propriety of such a sale because he was interested in it. Cook, Corp. § 662; Shaw v. Davis, 78 Md. 318, 28 Atl. 619, 23 L. R. A. 294. We see no evidence of concealment or underhand dealing. The proposal came from the Worth Manufacturing Company, in which six out of eight directors had no interest in the Engleworth Mills. It met a bidder who had offered within $100 of their bid for the property. It was submitted to and approved by a meeting of stockholders, called specially for the purpose of discussing and acting on the proposed purchase. No stockholder present voted against it. True, many of the votes were by proxy. But the charter allowed votes by proxy, and a by-law to that effect is lawful, even if the charter be silent. Com. v. Detwiller, 131 Pa. 614, 18 Atl. 990, 992, 7 L. R. A. 357, 360. Indeed, nearly all corporations in this country allow votes by proxy. We then have this condition of affairs: In a private corporation all the directors and a large majority of stockholders, in the exercise of their judgment, purchase a piece of property, believing it to be for the best interest of the enterprise. A minority object. Does this authorize the dissolution of the corporation, the cessation of all of its business, the taking away of all of its property out of the hands of the corporation and putting it in the hands of receivers? The question answers itself. Even were it a

fraud, or an act ultra vires, the court cannot be asked to destroy the whole enterprise in order to correct a wrong done to the enterprise. Other remedies will be applied. Cook, Corp. § 863. The purchase could be set aside.

Considering all the facts disclosed in the record, we are of the opinion that this is not a case for the appointment of a receiver, or for the destruction of the corporation; that the stockholders themselves are the best judges of what is for their interest. It is ordered that the decree of the circuit court be reversed, and that the receivers be discharged, and the property of the Worth Manufacturing Company be restored to the possession of the corporation and its officers, and that the injunction be dissolved.

There remains the important question whether the bill of complaint should be dismissed. The answer to that question depends upon the relief prayed and the jurisdiction of the circuit court to grant it under the averments of the bill. The only act of fraud distinctly charged in the bill is the purchase of the Engleworth Mills for $11,100 in November, 1900, from two of the directors. If it could be proved, notwithstanding the full explanation given in the answer and affidavits, that there was in that transaction fraud, either constructive or actual, it could be remedied by a rescission of the contract and a return of the purchase price; but there is no prayer for that relief in the bill, so that subject-matter may be laid out of view. The relief prayed is a decree adjudging that the Worth Manufacturing Company is insolvent, or in imminent danger of becoming insolvent, and that it be dissolved, an account taken of its assets and liabilities, and that the corporation be wound up by the receivers under the decree of the court. Leaving aside the allegations of the bill with regard to the Engleworth Mills transaction, the averments are that the business of the Worth Manufacturing Company is unprofitable, and carried on at a loss, so that, if it continued, it will result in the loss of all its assets; that its stock has no market value, and for 12 months its business has resulted in a regular loss of nearly $3,000 per month. That the directors do not live near the mills, and leave the management to the secretary and treasurer, a young man of 27 years of age, who is without the required business experience. Do these averments, which charge no act which is illegal, fraudulent, or ultra vires, state a case which gives jurisdiction to a circuit court of the United States, without a statute authorizing it, to wind up a corporation at the instance of a minority stockholder? There is no averment that the complainants have ever applied to the managing officers to alter any policy they are pursuing, or that the minority have attempted to call a stockholders' meeting to consider the affairs of the company, or that they have done anything to impress their views upon the majority except to precipitate financial difficulties for the corporation by filing this discrediting application for its winding up. Insolvency, without fraud, waste, or extravagance, is not ground for appointing receivers to wind up a corporation. Trust & Deposit Co. v. Spartanburg Waterworks Co. (C. C.) 91 Fed. 324; Lawrence Iron Works Co. v. Rockbridge Co. (C. C.) 47 Fed. 755; McGeorge v. Improvement Co. (C. C.) 57 Fed. 263–269; Taylor v. Land Co. (C. C.) 112 Fed. 449, 450. As to the alleged insolvency, it is true that the

defendant's proofs are by ex parte depositions. It would seem, however, that the inventory and report of the receivers appointed by the court may be safely acted upon, and their report shows assets over $258,000, liabilities $129,000,—a surplus of value over debts of over $128,000. The sustainable ground of complaint in the bill is reduced to the fact that for a year the mills have, during a time of depression in cotton manufacturing business, been run at a loss by the direction of a great majority of stockholders, and without objection from any creditor, trusting that the profitable business the corporation enjoyed before that time will return. The present case appears to be an effort to get the court to assume the management of the business of a corporation at the instance of a minority of stockholders, without the cooperation of a single creditor, and against the protest of the great majority of the stockholders. Looking to all the facts and surrounding circumstances, we do not find that the bill presents a case for equitable relief. In Smith v. Vulcan Iron Works, 165 U. S. 518–525, 17 Sup. Ct. 407, 41 L. Ed. 810, it was said that under the act of congress allowing appeals from the granting or continuing of an injunction, now amended to include the appointment of a receiver by act June 6, 1900 (31 Stat. 660), "it is intended not only to permit the defendant to obtain immediate relief from an injunction, the continuance of which, throughout the progress of the cause, might seriously affect his interests; but also to save both parties from the expense of further litigation, should the appellate court be of opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it." We think this is such a case, and that the bill should be dismissed.

The cause is remanded to the circuit court, with instructions to carry out this opinion. Reversed.