# Court of Appeals.

*November,* 1886.

## PEOPLE v. BUDDENSIECK.

(Affirming 4 *N. Y. Crim. Rep.,* 230.)

### CULPABLE NEGLIGENCE—INDICTMENT—EVIDENCE.

**An** indictment against defendant for manslaughter by culpable negligence giving the time of the commission of the offence, the place within the jurisdiction of the court and the circumstances, those enumerated in the statute, *held* to be sufficient.

Upon motion in arrest of judgment only two objections are available, first, to the jurisdiction of the court over the subject of the indictment; second, that the facts do not constitute a crime.

A juror who testifies that he knows of no reason why he cannot render an impartial verdict upon the evidence; that he had read in the newspapers about the occurrence in question, but had formed no opinion of the guilt or innocence of the prisoner; that his mind was free from any impression in regard thereto, but was of the opinion from what he had read that the catastrophe was the result of culpable negligence on the part of some one; that it would require evidence to remove the impression, but testified in substance that he nevertheless could go into the jury box and render an impartial verdict upon the evidence without being influenced by the opinion and impression derived from what he had read, is a competent juror.

A juror who testifies that from reading the papers he has formed an opinion of the guilt or innocence of the defendant which it would require evidence to remove, but could go into the jury box and decide the case upon the evidence without being influenced by such opinion, is a competent juror.

Mortar taken from the building, the fall of which caused the death of the deceased, having been designated by competent witnesses, as bad, it is proper upon the trial of the accused for causing such death to exhibit to the jury, for the purpose of comparison, specimens of mortar shown to be good.

The reception in evidence of written papers in themselves inadmissible, but the contents of which had been previously stated without objection by a witness, is not error requiring reversal of a judgment.

New trials ought not to be granted even when an exception is well taken unless the jury could draw from the evidence admitted under it some unfavorable influence to the excepting party. Nor should a new trial be granted upon an exception when the party excepting has by his own course of examination destroyed the force of his objection.

Photographs proven to be accurate representations of the actual scene are
    admissible in evidence as appropriate aids to a jury in applying the evi-
    dence, whether it relates to persons, things, or places.
The court may in its discretion, but is not bound, to allow the jury to visit
    and view the place of the occurrence.
Where no exceptions to a charge are taken, such charge cannot be reviewed
    by the appellate courts on the ground of error.
A stipulation by counsel to the effect " that a general exception should give
    defendant the benefit of a particular exception to any part of the charge,"
    will not avail.

APPEAL by defendant, Charles A. Buddensieck, from a
judgment of the General Term of the Supreme Court in the
First Department, June, 1886, affirming a judgment of the
Court of General Sessions of New York, convicting defendant
of manslaughter in the second degree.

The indictment is given together with the points of coun-
sel, and the facts in the report of the case at General Term
in 4 N. Y. Crim., 230.

*Richard S. Newcombe, William F. Howe* and *A. H. Hum-
mel,* for defendant, appellant.

*Randolph B. Martine,* district attorney, *DeLancey Nicoll,*
assistant, for the people, respondents.

DANFORTH, J.—The appellant draws in question : 1, the
sufficiency of the indictment ; 2, the competency of jurors ;
3, the rulings of the learned recorder upon questions of evi-
dence ; 4, his charge and refusals to charge as requested by
the prisoner's counsel, and he does so upon propositions which
appear to have been presented to the learned judges at gen-
eral term, and by them so fully considered and answered as
to make it apparent that a different result would have been
little better than a miscarriage of justice.

The indictment is under title IX, chap. 2, section 193,
subd. 3, and section 195 of the Penal Code, and in substance
charges that the prisoner by certain culpable negligence, acts
and omissions in the selection and use of materials for and in
the construction of a certain building which he was erecting

in the city and county of New York, and which acts are specified, killed and occasioned the death of one Walters.

One crime only is alleged: manslaughter in the second degree. Both sections of the Code above referred to define a number of unlawful acts, including those set out in the indictment, as constituting that crime. The case comes within those sections, and the form of the indictment is in substantial, if not literal, compliance with the provisions of section 284 of the Code of Criminal Procedure. Neither time, place nor circumstance was omitted. The time was stated to be the 13th of April and days prior thereto during the erection of the buildings, the place within the jurisdiction of the court, and the circumstances those enumerated in the statute as constituting the offense. We discover no imperfection therefore in it, either in form or substance; and those alleged against it by the appellant, if not wholly unfounded, do in no respect tend to his prejudice, so far as substantial rights upon the merits are concerned, and hence, they cannot affect either the indictment or judgment. Code Civil Procedure, § 285.

It follows that the trial court did not err in denying the defendant's motion in arrest of judgment. Upon such a motion only two objections are available: 1, to the jurisdiction of the court over the subject of the indictment; 2, that the facts stated do not constitute a crime. Code Crim. Procedure, §§ 467, 331.

The first was not presented to the trial court, nor are either now relied upon. The other objections are unimportant on such a motion.

It is next argued that the trial court erred in overruling the challenges to three jurors: 1, John Bloom, on examination by the district attorney, testified that he knew of no reason why, if sworn by the jury, he could not render an impartial verdict upon the evidence; and in answer to the prisoner's counsel he said that he had read in the newspapers about the occurrence in question, but had formed no opinion as to the guilt or innocence of the prisoner; that his mind was free from any impression in regard thereto or the charge

contained in the indictment, but was of the opinion from what he had read that the catastrophe was the result of culpable negligence on the part of some one, and that it would require evidence to remove the impression; 2, the condition of Meyer's mind was disclosed in substantially the same way, while, 3, Weil said that from reading the papers he had formed an opinion as to the guilt or innocence of the defendant, which it would require evidence to remove.

The challenge was upon the ground of actual bias existing in the minds of those proposed jurors, but each also testified in substance that he could nevertheless go into the jury box and render an impartial verdict upon the evidence submitted from the witness stand, without being influenced by the opinion or impression derived or formed from what he had read. There remained therefore no sufficient ground of challenge or reason why the trial court could not, in the exercise of a sound discretion, determine that these several persons could try the issue impartially and without prejudice to the substantial rights of the party challenging. They were therefore competent within the letter of the Code of Criminal Procedure relating to such questions, and the defendant's objections were properly overruled. *People* v. *Otto*, 101 N. Y., 690, 4 N. Y. Crim., 149; *People* v. *Crowley*, 102 N. Y., 234, 4 N. Y. Crim., 168; *People* v. *Carpenter*, 102 N. Y., 238, 4 N. Y. Crim., 177.

There are many exceptions to evidence. The first noticed by the appellant relates to the admission in evidence of a piece of brick and mortar produced by the witness D'Oench. He was inspector of buildings for the fire department and testified as to the condition of the fallen wall, its want of solidity, the materials of which it had been constructed, and among other things produced in evidence specimens of the mortar taken from the buildings, some of it from between two bricks, part of the fallen walls.

The case of the people turned in part upon the inferior quality of the materials, and anything to show how they in fact differed in their characteristics from good, sufficient and

suitable substances in general and approved use for like purposes, was competent. That the mortar in fact used by the defendant in the construction of the walls was of "a poor and inferior quality and chiefly composed of loam" was a distinct and important allegation. That it is the admixture of clear grit, sharp sand with lime, which gives it the character of cement, was proven. That the last is binding where the other is not; that bricks laid with mortar of lime and sand will resist the influence of the rain, while a composition of lime and loam will be washed out, was established so far as it could be by opinion and the result of observation and experience. The testimony came from one qualified to speak upon that subject, but the conditions illustrated by the various specimens of mortar, and mortar and bricks taken from the ruins, and the specimen from another building, were some evidence of the truth of his assertion, and they could properly be received, not only as confirming his opinion but to enable the jurors the better to understand and appreciate the difference in effect between the mortar used by the defendant and that properly prepared. That one was strong and solid, the brick firmly imbedded in the mortar, and the other disjointed and with no coherence, was some evidence that the differences pointed out were substantial.

The evidence as to the quality and component parts of the mortar used by the defendant was indispensable as part of the accusation; and the evidence, as to the proper ingredients, of mortar used by others and in other buildings, and its quality and effect, was not less competent as tending to show the cause of the falling of the walls. The defendant's mortar the expert pronounced bad, the other good. The object of using the mortar was the same in both cases; the specimens tended to prove the truth of his assertion. Indeed, the argument of the appellant goes to the weight of the evidence, rather than to its admissibility. The learned counsel states that if the witnesses had explained and pointed out the difference between the two specimens, the reason why one was good and the other bad, "the specimens might have been

shown to the jury as illustrating the testimony of the witnesses." If there was any lack of such testimony, and it seems to us there was not, it would only show that further use might have been made of the pieces of brick and mortar, but would in nowise support the general objection that their exhibition to the jury was "incompetent or inadmissible for any purpose." The cases cited by the appellant upon this branch of the case have been examined, but we find none in point.

During the cross-examination of this witness (D'Oench) at the request of defendant's counsel, he stated that he superintended the general work of the office of inspectors of buildings, and that official examiners were his subordinates, and their duty, to make reports among other things of the condition of buildings, the violation of building laws, and unsafe buildings, and also if improper materials were used in construction to notify him; that they did report the buildings in question as unsafe. He was then asked by defendant's counsel: "What are those reports you have in your hands?" and answered: "' Unsafe reports in reference to those buildings." They bore date January, 1885, and were read in evidence as defendant's exhibit No. 1. Five other reports relating to buildings adjoining that mentioned in exhibit No. 1 were upon like request received in evidence and marked defendant's exhibits Nos. 2, 3, 4, 5 and 6, showing the buildings at the time of the reports to be unsafe.

Upon redirect examination the district attorney offered in evidence certain other reports, made subsequently and in successive weeks up to the 13th of April, concerning the same buildings and their safety. The defendant's counsel said: "Before they are put in evidence, I have a right to examine this witness upon them;" and doing so he showed that the reports exhibited the condition of the buildings on the day the reports were made, whether they had remained unsafe or had been changed, and calling attention to one he said: "What do the words ' nothing done ' on that report mean?" and received for answer: "That nothing has been done, that

the order of the department has not been complied with." He also showed that there was no record of any unsafety save that reported in January.

The general contents of these reports, and a condition of the buildings substantially as therein stated, was also disclosed by parol evidence, coming either upon examination by defendant's counsel, or upon examination by the district attorney in answer or explanation of that so obtained. It is manifest therefore that their admission could in no respect tend to the defendant's prejudice ; and while it is important in all cases that evidence should be free from exception, a new trial ought not to be granted even where one is well taken, unless the jury could draw from evidence admitted under it some unfavorable inference (Code Crim. Proc. § 542); nor when the party excepting has by his own course of examination destroyed the force of his objection. Both rules apply here.

The next exception brought to our attention is the use in evidence of a photograph of the premises. It was taken during the trial, but it appeared that the part represented was in the same condition as when first seen by the witness on the 25th of April, or soon after the structure fell. No objection was made that the person taking the picture was not competent or skilled in his art, nor that the then condition of the ruins was unimportant as throwing light upon the manner of the construction of the buildings. It exhibited the surface, condition and state of the wall, and it no doubt carried to the minds of the jurors a better image of the subject matter concerning which negligence was charged than any oral description by eye-witnesses could have done. Its accuracy as a faithful representation of the actual scene was proven and in such a case it must be deemed established that photographic scenes are admissible in evidence as appropriate aids to a jury in applying the evidence, whether it relates to persons, things or places. *Cozzens* v. *Higgins*, 1 Abb. Ct. App. Dec. 451; *Cowley* v. *People*, 83 N. Y., 464; *Durst* v. *Masters*, L. R. 1 Prob. Div. 373, 378.

No doubt the court might in its discretion have allowed

the jury to visit and view the premises, as it was asked to do by the prisoner's counsel, but it was not bound to do so. Code Crim. Proc. § 411.

There are many other propositions submitted by the appellant in relation to rulings upon evidence. They are less important than the foregoing. They seem indeed, in view of the general course of the trial and the conclusive character of the testimony unobjected to, and which justified the conviction, to have no merit, even if the exceptions upon which they are submitted were technically well taken. We do not think they were, nor do they seem to involve any question which requires discussion.

The next point brings before us several allegations of error in the instructions under which the evidence was given to the jury. The record does not show that any exception to the charge was in fact taken, and there is therefore no question for us to review.

We find in the printed brief of the appellant a statement that a stipulation was made by counsel to the effect " that a general exception should give the defendant the benefit of a particular exception to any part of the charge." This will not avail. *Briggs* v. *Waldron*, 83 N. Y., 582.

An exception is not alone for the benefit of the litigant, but is required for the sake of justice and fair dealing, and in order among other things that the attention of the trial judge being called to the supposed error, he may, if he thinks proper, correct it before the jury are called upon to consider their verdict.

There were, however, numerous requests to charge ; some were refused, and the exceptions to the refusal are now said to have been " well taken." No argument is presented in support of that assertion, and our own examination discloses no error. The learned recorder so conducted the trial as to give the defendant the benefit of every doubt ; his instructions to the jury were confined to the testimony and their attention directed to the very right of the case as it might appear to them upon the evidence. His rulings have been

approved by the general term after a most deliberate and minute examination of the law and the facts; and that the case has been in both courts well and properly decided, we find no reason to doubt.

The result necessarily follows that the judgment appealed from should be affirmed.

All concur.