THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EUGENE A. MARVIN, Appellant.

*Incompetent testimony — when it does not justify a reversal in a criminal case.*

Where, upon the trial of a prisoner for a violation of section 527 of the Penal Code, incompetent testimony is admitted over his objection, if such testimony is not prejudicial to him, and does not affect substantial rights, it is not sufficient under section 542 of the Code of Criminal Procedure, to justify a reversal of judgment.

APPEAL by the defendant, Eugene A. Marvin, from a judgment of the Court of General Sessions, held in and for the city and county of New York on the 23d day of June, 1893, convicting him, under section 527 of the Penal Code, of the crime of printing a letter or circular offering counterfeit money for sale.

*F. Howe*, for the appellant.

*John D. Lindsay*, for the People, respondent.

FOLLETT, J. :

The defendant was indicted for the crime of feloniously printing, at the city of New York, on the 16th of December, 1892, a certain letter or circular purporting to advertise and offer for sale and distribution counterfeit money, contrary to section 527 of the Penal Code. A copy of the circular was set out in the indictment, and was marked Exhibit No. 2 on the trial. The defendant interposed the plea of not guilty, but he offered no evidence, except he called seven wit-

nesses who testified that he had previously borne a good reputation. The jury rendered a verdict of guilty, and thereupon it was adjudged that the defendant be imprisoned in a State prison, at hard labor, for one year, and pay a fine of $1,000, and stand committed until paid, not exceeding one day for each dollar of the fine imposed, from and after the termination of the year's imprisonment. The undisputed evidence in this case, which is of the most satisfactory and convincing character, shows that the defendant had been engaged in printing the circular set out in the indictment, and many others similar thereto, for four years. When his place of business was entered by the officers of the law, on the 16th of December, 1892, the circular set out in the indictment and similar ones, Exhibits Nos. 1 and 3, were being printed. It was testified that during four years preceding December 16, 1892, millions of such circulars had been printed by the defendant, and a quantity of them was found in his place of business so large that it required three trucks to remove them to police headquarters. The defendant was not sworn, and, as before stated, no evidence was offered in his behalf, except of previous good reputation. He made no attempt to explain why he was engaged in printing these circulars, or who his employers were, or what use he intended to make of them, or how he intended to dispose of them. The guilt of the defendant was proved beyond a shadow of doubt. He now seeks a reversal of the judgment upon the ground that the court erred in admitting certain testimony.

Anthony Comstock was called as a witness and testified that he was the chief special agent of the New York Society for the Suppression of Vice and an inspector of the post office department of the United States. He testified that in his official capacity he had frequently raided the places of business of men engaged in dealing in "green goods" or in advertising counterfeit money for sale, and had made many arrests, and in this way he had become familiar with their circulars, their literature and the mode in which they conducted their business. He was allowed to testify, over the defendant's objection and exception, that the circular set out in the indictment, Exhibit No. 2, was like those usually used by persons engaged in advertising counterfeit money for sale. He was also allowed to testify, over a like objection, that printed circulars marked Exhibits

FIRST DEPARTMENT, JUNE TERM, 1894. [Vol. 79.

Nos. 1, 3 and 9 inclusive, were of the kind and character in use by criminals engaged in such business.

It seems to us that this testimony added nothing to the force and effect of the circulars themselves, which, on their face, furnish the most conclusive evidence of the character of the business in which the defendant was engaged, and of his purpose.

Section 527 of the Penal Code, under which the indictment was found, declares that such papers and circulars "shall be deemed presumptive proof of the fraudulent character of such scheme."

As was said in *People* v. *Chacon* (102 N. Y. 669): "The case against the defendant was so strong, and his murderous intent and his threats were so fully proven, that evidence that Williams had heard of the threats, particularly after the court had just stricken out similar evidence as hearsay, could not have influenced the verdict, and the refusal to strike out the evidence, therefore, furnishes no reason for a reversal of the conviction." (*People* v. *Buddensieck*, 103 N. Y. 487; *People* v. *Dimick*, 107 id. 13.) In the last case cited it was said, after referring to sections 542 and 684 of the Code of Criminal Procedure: "These are mandates of the law-making power, and the courts should, with reason and discretion, give them full force and effect. Giving them the observance due in this case, we find no exception in the record showing that the defendant has been prejudiced in respect to any substantial right."

In case this testimony was incompetent, which we do not decide, it could not have been prejudicial to the defendant or have affected his substantial rights. Mink, who had been employed by defendant as a printer for several years, and Frosch, who had been so employed for four or five years, and who were found engaged in printing circulars when defendant's place of business was entered, testified that they were then engaged in printing the circular set out in the indictment. Mink further testified that during the four years preceding December 16, 1892, he had printed millions of similar circulars. These two men were arrested and the defendant in protesting against it said: "You don't want to hold these men, * * * I am responsible for anything they did; what they did they did by my orders."

Bateman and Wellman, two employees of the defendant in this business, testified that the defendant had long been engaged in this

business, and described the extent of it. No attempt was made to contradict any of this evidence, and it is apparent that the defendant deliberately engaged in the printing of these circulars and that he knew the purpose for which they were printed. Evidence that similar circulars have been found in the possession of persons engaged in the business of selling or pretending to sell counterfeit money, and that they have been convicted, bore on no issue and could not, under the case made by the People, have harmed the defendant.

As before stated, the defendant's place of business was searched December 16, 1892, and among other printed matter a circular, known as Exhibit No. 8, was found, which concludes as follows :

"Keep this for reference.

"When you are ready to come and see me send me the following telegraph dispatch : A. DUPONT, 304 Morris avenue, Elizabeth, New Jersey."

In the defendant's place of business the following letter was found pinned to Exhibit No. 8 :

"JERSEY CITY, *Dec. 12th*, 1892.

"FRIEND MARVIN :

"Kindly print me an outfit of 10 M. on same style as last; 5 M. A. Dupont, Eliz. N. J., and 5 M. H. Durand, 262 W. 116th St. N. Y. city. I want the same circular as I had last order.

"5,000 send copying ink No. 1–5,000.

"5,000 send magazine No. 1–5,000.

"I would like to have them this week, as I have run out entirely of material."

The defendant was arrested December 22, 1892.

Mr. Comstock was permitted to testify that between December 16 and 31, 1892 (the exact date he was unable to state), he visited No. 304 Morris avenue, Elizabeth, N. J., and found a new building with only one room on the first floor which had a board partition and a chair in it, the upper story being occupied as a dwelling. It is difficult to see how this evidence could have prejudiced the defendant. The witness also testified that May 15, 1893, he visited Bridgeport, Ct., and that he there found circulars which were copies of those found in defendant's place of business, and a bill for work done, which was marked No. 11, for identification. The cashier of

the defendant, Percy Wellman, testified that part of this bill was in defendant's handwriting. This bill the court refused to receive in evidence and it was stricken from the record. In this there was certainly no error. No error was committed by the court in receiving the evidence at folios 199 and 200, nor in permitting the cross-examination of the witness Tower by the district attorney. After a careful examination of the whole record, we are unable to find any error which affected the substantial rights of the defendant, and this seems to be a case to which section 542 of the Code of Criminal Procedure is particularly applicable. "After hearing the appeal the court must give judgment, without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed.