G. D. HAMPTON v. THE NORFOLK AND WESTERN RAILROAD COMPANY.

*Action for Damages—Trial—Evidence—Photographs as Evidence—" Broadside " Exception.*

1. Where, in the trial of an action for injuries, it became material to show the location of a path existing two years before the trial at the time of and on the lot where the accident occurred, there was evidence of changes in the situation and that the lot had been fenced shortly after the accident, a photograph of the location, taken just before the trial, was properly rejected as evidence, it being inadmissible, whether offered as substantive evidence or as an unauthorized map. (Clark, J., dissenting.)

2. A " broadside " exception to the charge, without pointing out the error complained of, will not be considered.

CIVIL ACTION for damages, tried before *Green, J.*, and a jury, at February, 1897, Term of FORSYTH Superior Court. The facts appear in the opinion. From a judgment for the plaintiff the defendant appealed.

*Messrs. J. S. Grogan* and *A. E. Holton*, for plaintiff.
*Messrs. Watson & Buxton*, for defendant (appellant).

FURCHES, J.: This is an action for damages against the defendant. The complaint states that the injury complained of was received in 1894, but it does not appear from the evidence whether it was in 1894 or 1895. The defendant's road runs through the city of Winston, along Tenth street, which had been excavated to a depth of about 30 feet at the point where the injury was received.

It is in evidence that the plaintiff, on the night of the injury, went to Watlington's store, which fronts on Liberty street, and purchased about 60 pounds of groceries, put them in a bag and started home, and by some means missed his way. The night being dark, he fell into this deep cut and received the injury complained of. It appears that the rear end of Watlington's store is about 30 feet from Tenth street, but the plaintiff testified that he had gone about 150 yards before he fell into the cut—thus traveling nearly parallel with defendant's road. He also testified that he struck a path, after leaving the store, which he followed until he fell into the cut; that it was so dark he could not see the path, but he could feel it, so as to know he was in a path.

The plaintiff alleged that the injury was caused by the defendant's negligence in not fencing, and keeping fenced, this deep and dangerous cut in a city like Winston, while the defendant alleged that it was a back lot where the plaintiff fell, fenced on the front by the owner and that the

defendant was guilty of no negligence in not fencing it. The defendant also denied that there was any path running through said lot, as the plaintiff had testified.

Upon these points there was much evidence on both sides. Watlington and others testified that there was no fence, and Watlington also testified that he had usually kept some empty barrels standing along the street to prevent persons going from the store back to the defendant's road, but he had sold them a short time before and the way was open from Liberty street back to defendant's road.

B. F. Copple, J. W. Stout, A. H. Gilliam and Watlington testified that there was a path, as testified to by the plaintiff. While A. W. Morton and F A. Nading testified that they lived near by and "never knew of any pass way," &c., and L. Norvell, and probably others, testified that there was a wire fence at Watlington's store at the time of the injury.

Without undertaking to give all the evidence, we have stated it sufficiently to present the contention of the parties.

The defendant offered a map on the trial, made by one of the defendant's employees, which was allowed to be used without objection, though it was made by defendant's employees and not under order of court. The defendant also, during the trial, offered in evidence a photograph, which was objected to, and the defendant introduced A. J. Farrell, who testified: "I am a photographer. I took the pictures last Friday; they are correct as the ground view is." Ruled out and the defendant excepted. This trial took place in February of this year (1897), and there is evidence showing there have been changes made in the fencing since the injury was received, and that the defendant has since enclosed this cut.

This is the only exception taken during the trial. But the defendant asked several written instructions, which

HAMPTON v. RAILROAD COMPANY.

were not given     And the defendant, after appealing from the judgment in favor of the plaintiff, assigns the following grounds of error:

1. "The refusal of his Honor to allow the photographs offered to be used as evidence."

2. "The refusal of his Honor to give the special instructions prayed for by the defendant."

3. "The instructions as given were calculated to mislead the jury, and are erroneous in law."

Neither of these assignments can be sustained. The photographs were not evidence *per se*. They did not represent the plaintiff, the fall or the injury. At most, they could only supply the place of an unauthorized map, which is not evidence and which the court may refuse to allow in evidence. *Burwell* v. *Sneed*, 104 N. C., 118. And when such maps are allowed, they are not evidence, and can only be used by a witness to explain his evidence to the jury. *Dobson* v. *Whisenhant*, 101 N. C., 647. There was no such purpose as this manifested in this case. It seems to have been the idea of the defendant that they were, of themselves, substantive evidence. If we are in error in this, it is because the defendant has failed to make manifest anything to the contrary.

We have no doubt but what a photograph, taken soon after the occurrence, might be used, as an unauthorized map may be used. *Riddle* v. *Germanton*, 117 N. C., 387. But, where it appeared to the court that the photograph had been taken two years or more after the injury was received, and where there was evidence of changes in the situation, and where it was material to establish a path (as in this case) as existing two years ago, but which was necessarily effaced by the lapse of time, the ground soon after the injury was received having been fenced up, and the defendant having the use of a map of its own m

120—68

which was shown to have been made soon after the plaintiff was injured, it seems to us to have been altogether proper to exclude the photograph, whether introduced as original, independent evidence or as an unauthorized map.

The second assignment cannot be sustained. These prayers are long, confused and argumentative—each containing some proposition that the court could not properly give. *State* v. *Neal*, at this term; *Railroad* v. *Wainright*, 25 S. E. Rep., 622 (97 Ga.).

The third assignment is what is termed a "broad-side" exception to the charge, without pointing any error, and cannot be sustained. This has been so often decided by this court that it seems to us, if the learned counsel had thought there was error in the charge, they would have complied with this oft-repeated rule. *Barcello* v. *Hapgood*, 118 N. C., 712; *State* v. *Downs*, 118 N. C., 1242; *Mc-Kinnon* v. *Morrison*, 104 N. C., 354, and cases cited in Clark's Code (2nd Ed.), pp. 382, 383. There is no error and the judgment is affirmed.

CLARK, J., dissenting: A "photograph of the place of accident was offered but ruled out, and the defendant excepted." The photographer testified that the views were correct and taken from three different standpoints. Another witness (Thomas) testified "there is very little change in the ground from the time of the accident." This is the first time this point has been presented in this court, but it has often arisen elsewhere and the decisions have been quite uniform in admitting such evidence. The nature of the locality was a material point in the trial. The testimony of many witnesses was offered for the purpose of conveying to the minds of the jury a picture of the *locus in quo*. This necessarily conveyed to them an idea of it, which was more or less imperfect. A plat made by one

of the parties was admitted.    This was competent as an aid to making clearer the testimony of the party offering it. *Justice* v. *Luther*, 94 N. C., 793; *Dobson* v. *Whisenhant*, 101 N. C., 645.    A map, not made under the order of the court, is really only the declaration, so to speak, of the party making it; its reliability depends entirely upon his accuracy and conscientiousness, and is therefore only admissible as his evidence, and because it may convey to the eyes of the jury somewhat more accurately the description which the witness was endeavoring to convey to their ears by his oral testimony.    In many instances a photograph will be greater assistance to the jury than a plat.    It is a picture of the place made automatically, the spot being reflected as in a mirror and the image chemically made permanent.    If the jury could go out to view the spot in all cases where the nature of the locality is material, as in this, they would get a much more accurate idea than the language of any witness, however graphic, could convey to them. There are a vast number of cases in which photographs would greatly aid a jury which is unable to view the spot or subject matter, because changed or too inconvenient to visit.

Whether the jury should be permitted to view the place of the accident or crime, ''rests in the discretion of the trial judge; on some occasions it may be very useful and, indeed, almost necessary.    It was permitted in the trial of the Cluverius case, 81 Va., 787, and there are many precedents elsewhere for such practice.    It was allowed in this State on the trial (for murder) of Gooch, 94 N. C., 987, and has been done in many other cases.''    *Jenkins* v. *Railroad*, 110 N. C., 438.    A photograph offers nearly every advantage which could be obtained by a visit of the jury to the spot, and is without the objections to a ''jury of view,'' which are that it is frequently impracticable, owing

to the distance of the locality, loss of time and expense, be-
sides the opportunity of irregularity in the conduct of the
jury. The photograph brings the spot to the jury, and in
many cases a stereopticon has been used in the court room
to enlarge the picture, a more correct and vivid idea being
thus conveyed to the minds of the jury than could be done
by any language of witnesses, even when aided by the
plat made by the order of the court.

It is true, a photograph taken by order of the court
would stand upon a better footing than one made *ex parte*,
but frequently a photograph must be made, if at all, at
once—before there is any action pending—for instance, to
represent the figure and position of one found slain, the
locality of a railroad wreck, and in many other instances
in which the value of the photograph as evidence depends
upon its being taken before there has been any change after
the occurrence in the locality or object whose representa-
tion it is intended to perpetuate and present to the jury.
Accordingly, upon *prima facie* evidence of the photograph
being a representation of what it is claimed to be, the courts
admit it, subject to cross examination as to the point of view
from which it was taken, the skill of the artist, &c.; in
short, like any other testimony, to be weighed by the jury.

In an action against the town to recover damages for
injuries caused by a defect in a highway, a photograph of
the place is admissible, if verified by proof that it is a true
representation. *Blair* v. *Pelham*, 118 Mass., 420, citing
*Marcy* v. *Barnes*, 16 Gray, 161; *Hollenbeck* v. *Rowley*, 8
Allen, 473; *Cozzens* v. *Higgins*, 1 Abb. N. Y., 451; *Ruloff*
v. *People*, 45 N. Y., 213; *Udderzook* v. *Com.*, 76 Pa. St.,
340; *Church* v. *Milwaukee*, 31 Wis., 512. Whether it is
sufficiently verified is a preliminary question of fact for the
Judge. *Com.* v. *Coe*, 115 Mass., 481; *Walker* v. *Curtis*,
116 Mass., 98."

HAMPTON v. RAILROAD COMPANY.

Photographic pictures of the place where a homicide was committed are competent when it is shown that there was no material change in the aspect after the homicide and before the photograph is taken. *Keyes* v. *State*, 122 Ind., 527, citing *People* v. *Buddensieck*, 103 N. Y., 487; *Cowley* v. *People*, 83 N. Y., 464; *Reddin* v. *Gates*, 52 Iowa, 210, and other cases.

A photograph of the broken trestle and wrecked train, taken about two hours after the accident and verified by the person by whom it was taken, is admissible in evidence. *Kansas R. Co.* v. *Smith*, 90 Ala., 25, citing *Luke* v. *Calhoun*, 52 Ala., 115; *Locke* v. *Railroad*, 46 Iowa, and many other cases.

In *Dyson* v. *Railroad*, 57 Conn., 10, which was an action for an injury at a railroad crossing, a photograph was admitted in evidence, "the change in the appearance of the locality made by the falling of the leaves from the trees being open to explanation," citing *Randall* v. *Chase*, 133 Mass., 210 and other cases.

In *People* v. *Buddensieck*, 103 N. Y., 487, 500, which was a trial for homicide, the court says the photograph "no doubt carried to the minds of the jury a better image of the subject matter than any oral description by eye witnesses could have done. * * * No doubt the court, in its discretion, might have allowed the jury to visit and view the premises, as it was asked to do by the prisoner's counsel, but it was not bound to do so."

Photographs have been admitted to show the appearance of the plaintiff's back three days after an assault and battery. *Reddin* v. *Gates*, 52 Iowa, 213. Long ago, the poet Horace, spoke of the greater effect of that which is seen than of that which is described by words:

" Segnius irritant animos demissa per aurem
Quam quae sunt oculis subjecta fidelibus."

Where, however, a photograph was taken by an amateur two months after a railroad accident, and there was evidence that it did not correctly represent the condition and surroundings as they were at the time of the accident, it was properly excluded. *Railroad* v. *Monaghan*, 140 Ill., 474. The material point in that case was whether the view of the engineer had been obstructed by box cars standing on the side track, which had been removed when the photograph was taken.

Where the plaintiff testified that the photograph offered by him represented fairly the *locus in quo* of a railroad accident, though he did not take it and did not know from what point it was taken, the photograph was admitted (*Archer* v. *Railroad*, 106 N. Y., 589), the court saying that such pictures, like maps and other diagrams, "serve to explain or illustrate and apply testimony, and are uniformly received and are useful, if not indispensable, to enable courts and juries to comprehend readily the question in dispute. Of course, its value, like the value of other evidence, depends upon its accuracy, of which there was some evidence."

The decisions admitting photographs as proper and useful evidence are numerous and almost uniform. Among the latest cases may be cited *Turner* v. *Railroad*, 158 Mass., 261; *Omaha* v. *Beeson*, 36 Neb., 361; *Missouri R. Co.* v. *Moore* (Tex.), 15 S. W. Rep., 714.

The text-books are to the same effect. 1 Thompson on Trials, Section 869; 2 Jones on Evidence, Section 597; 2 Rice on Evidence, p. 1170; Bradner on Evidence, p. 140. Indeed, the court, in its discretion, may permit the photographs to be enlarged on examination in the court room by a stereoscope or other magnifying glass. *Rockford* v. *Russell*, 9 Bradw. (Ill.), 229; *Barker* v. *Perry*, 67 Iowa, 146; *German School* v. *Dubuque*, 64 Iowa, 736, and the jury can

take the photographs to their room.   Thompson on Trials, *supra*.   The law avails itself of every advance in science which renders the investigation of truth more accurate, and recent authorities have admitted as aids to a court in its search after truth the Roentgen or X ray photographs, "their admission being opposed on the familiar principle, so often appealed to in the courts of this country, that this kind of evidence was unknown to the learned lawyers of the Heptarchy, and therefore was no evidence at all."   31 Am. Law Review, 268.   Doubtless in the near future projectoscopes may be used in the court room whenever the object shall be to convey to the minds of the jury a true picture of living action, as the movements of a horse, of a train, an assault and battery, or a riot and the like.   Law, like medicine, must make use of every improvement that will secure greater certainty in attaining its object.

This being the first case of the kind here, a review of the authorities and reasoning sustaining the admission of such evidence has been not inappropriate.   The best evidence, of course, would be a view of the premises themselves by the jury, if it is practicable and convenient, and if it can be had before there has been any change; but even then this lies in the discretion of the trial judge.   The description of the place by the testimony of witnesses is a substitute and, as aids to such testimony, a map or diagram is competent, even if made *ex parte*, and for a stronger reason a photograph, in which the locality delineates itself automatically, so to speak, is admissible.   Photographs have become exceedingly valuable helps in cases of homicide, collision, accident and, indeed, in all cases where the jury need to be informed as to the *locus in quo*.   For that reason, they will doubtless be hereafter largely used in trials here, as they have been elsewhere, although the majority of the court has deemed the photograph not admissible in this case.   In

the present case the description of the *locus in quo* was material, as shown by the prolix and somewhat conflicting oral evidence resorted to in the effort to convey a comprehension of it to the jury, in which effort the photograph was an aid to which the jury were entitled, most especially as there was evidence that the locality had not changed. The photographer was also introduced and testified to the correctness of the photographs, taken from three different points.    There was no contradictory evidence as to this, and the exclusion was not, and could not have been, upon the preliminary question that there was no evidence to identify the photographs or a change in the aspect of the ground, but it was upon the broad ground that they were not admissible in evidence.    In this, I think, there was error.