FIDELITY INSURANCE, TRUST & SAFE DEPOSIT CO. v. NORFOLK & W. R. CO. (HAMPTON, Intervener).

(Circuit Court, W. D. North Carolina. March 20, 1902.)

1. RAILROADS—EFFECT OF RECEIVERSHIP—JUDGMENT AGAINST COMPANY.
   A railroad corporation does not go out of existence because of the appointment of receivers for its property, and may be sued, and a judgment obtained against it, notwithstanding the receivership; but, where the cause of action arose before the appointment of the receivers, such judgment does not constitute a debt of the receivership whether the receivers were parties to it or not.

2. SAME—FORECLOSURE SUIT—PREFERENTIAL DEBTS.
   A judgment obtained against a railroad company after its property has been placed in the hands of receivers in a suit to foreclose a mortgage thereon for a tort committed by the company prior to the receivership is not entitled to priority of payment over claims of the mortgage bondholders from the earnings of the receivership.

3. SAME—NORTH CAROLINA STATUTE.
   Code N. C. § 1255, which provides that the giving of a mortgage by a corporation shall not exempt its property or earnings from execution for the satisfaction of a judgment against the corporation for a tort, can operate only on property within the state; and where the property of a railroad company in the state consisted solely of a lease of the property and franchises of another company, taken subject to a mortgage given by the lessor, and which had been displaced and superseded by the appointment of receivers in a suit to foreclose such mortgage and the subsequent sale of the property therein prior to the rendition of a judgment by a state court against the lessee company for a tort, there were at the time of the rendition of the judgment no property or earnings of the defendant within the state to which such statute can apply, and it does not affect the rights of the judgment creditor with respect to other property or funds of the defendant.

In Equity. Suit for foreclosure of a mortgage. On petition of intervention of Gideon D. Hampton.

The petition of the intervener was as follows:

"The petition of Gideon D. Hampton respectfully showeth to the Court: (1) That on the 22d day of February, 1897, he recovered judgment against the defendant, the Norfolk & Western Railroad Co., in the superior court of the county of Forsyth and state of North Carolina, for the sum of one thousand dollars and costs in an action for tort against the said railroad for personal injuries inflicted by the said railroad upon the said Gideon D. Hampton. That the said judgment remains wholly unpaid and unsatisfied, although demand had been made upon defendant and the receivers hereinafter referred to for the payment thereof. (2) That by an order made in the above-entitled cause on the 7th day of February, 1895, Frederick J. Kimball and Henry Fink, Esqs., were appointed receivers of the properties and franchises of the defendant, the Norfolk & Western Railroad Co. That as such receivers there came into their hands large sums of money, and, as your petitioner is informed, advised, and believes, there are still in the hands of said receivers large sums of money, more than enough to satisfy the judgment of your petitioner; and your petitioner insists that there ought now be paid by the said receivers to your petitioner enough of said funds to satisfy the said judgment and costs. (3) That your petitioner is informed and be-

lieves, and so avers, that from the properties and franchises aforesaid, besides the mortgage properties coming into the possession of the said receivers, there also came into the hands of the said receivers a large amount of properties of the said railroad not covered by any lien or mortgage, the exact amount of which your petitioner is unable to ascertain; but your petitioner avers, as aforesaid, that the same would be more than enough to satisfy his judgment, and therefore asks that the said receivers be ordered to account with petitioner, and show what funds and properties not subject to the mortgage sought to be foreclosed came into their hands. (4) Your petitioner further alleges that the purported lease of the Roanoke & Southern Railway Company to the Norfolk & Western Railroad Company for nine hundred and ninety-nine years was, in effect, a sale; that, although the aforesaid lessee at the time of the injury complained of was nominally operating said road as such lessee, that it was in reality the owner thereof. (5) Your petitioner further prays that an order be passed by this honorable court directing that any property, franchises, leasehold interests, or other property whatever, subject to the lien of petitioner's judgment, be applied to the satisfaction of the same. (6) And your petitioner further prays for such other and further relief in the premises as may be just and proper.

> "J. S. Grogan,
> "Jones & Patterson,
> "Holton & Alexander,
> "Attorneys for Petitioner."

"To Watson, Buxton & Watson, Attorneys for Defendant: You will take notice that on the 27th day of January, at 12 o'clock m., 1902, before his honor the circuit judge of the United States circuit court presiding at the city of Greensboro, N. C., at the special term, to be holden, beginning on the 20th day of January, 1902, a motion will be made in the above-entitled cause for the relief demanded in the accompanying petition.

"This January 9th, 1902.                J. S. Grogan,
> "Jones & Patterson,
> "Holton & Alexander,
> "Attorneys for Gideon D. Hampton."

Indorsed on back:

"Executed by delivering a copy of this writ to J. C. Buxton, of the firm of Watson, Buxton and Watson, attorneys for the N. & W. Railroad Co.
"January 13th, 1902.                J. M. Millikan, U. S. Marshal,
> "Per A. O. Griffin, D. M."

[Seal United States Circuit Court, Western Dist. of N. C., at Greensboro.] "A true copy.  Test: Sam'l L. Trogdon, Clerk."

J. S. Grogan, Jones & Patterson, and Holton & Alexander, for intervener.

Watson, Buxton & Watson and Jos. I. Doran, for defendants.

SIMONTON, Circuit Judge. This case comes up by petition of intervention in the main cause, of the Fidelity Insurance, Trust & Safe Deposit Company against the Norfolk & Western Railroad Company. On 6th February, 1895, under proceedings instituted in the circuit court of the United States for the Eastern district of Virginia by the Fidelity Insurance, Trust & Safe Deposit Company against the Norfolk & Western Railroad Company, the defendant company was placed in the hands of F. I. Kimball and Henry Finck as receivers of all of its property and assets. On 7th February in the same year, by auxiliary proceedings had in this court, the appointment of said receivers was recognized and confirmed, and they were made receivers in this jurisdiction. Before the appointment of said receivers, and whilst the Norfolk & Western Railroad Company was operating the

Roanoke & Southern Railway under a lease of 999 years, the petitioner, Gideon D. Hampton, on 21st December, 1894, was injured on the track of the Roanoke & Southern Railway in or near the town of Winston, N. C. On the 6th March, 1895, subsequent to the appointment of said receivers, Hampton instituted a suit in tort in the superior court for Forsyth county, N. C., against the Norfolk & Western Railroad Company, the lessee, for injuries sustained on this leased road. On 22d February, 1897, he obtained a verdict against the defendant in the sum of $1,000, and entered judgment therefor, which judgment was affirmed on appeal by the supreme court of North Carolina on 21st April, 1897. Hampton v. Railroad Co., 120 N. C. 534, 27 S. E. 96, 35 L. R. A. 808. The summons and complaint in this case were served upon H. H. S. Handy, who had been an official of the defendant company at Winston, and who also had been appointed by this court the agent of the receivers, upon whom process might be served. In the suit the firm who were counsel for the receivers appeared and defended the action in the name and on behalf of the railroad company. Some discussion arose in the argument of the present cause upon the question if the suit in the state court was a suit against the receivers. In its terms it was a suit against the Norfolk & Western Railroad for a tort committed by that company before the cause in which the receivers were appointed was instituted. The railroad company did not go out of existence when the receivers were appointed. First Nat. Bank v. Pahquioque Nat. Bank, 14 Wall. 383, 20 L. Ed. 840. It still remained a legal entity, and could be sued, no injunction forbidding it having been passed. Ex parte Bates (C. C.) 84 Fed. 67. The act complained of was not the act of the receivers or their agents. Nor did the receivers make themselves parties to the suit on the record. It may be—no doubt it was—the fact that they instructed defense to be made to the suit. This it was their duty to do. Bosworth v. Association, 174 U. S. 186, 19 Sup. Ct. 625, 43 L. Ed. 941; Davis v. Gray, 16 Wall. 217, 21 L. Ed. 447. But in doing this they did not assume the obligation of the corporation; nor was the judgment against them as receivers for things done in the receivership; nor could it rank as such judgment, even were the judgment against the receivers eo nomine. Conclusive as it might be as to the existence and amount of the plaintiff's claim, the time and manner of its payment must be controlled by the court appointing the receiver. Dillingham v. Hawk, 9 C. C. A. 101, 60 Fed. 494, 23 L. R. A. 517. Having obtained and entered his judgment, Hampton intervened in a cause entitled "Mercantile Trust & Deposit Company v. Roanoke & Southern Railway Company and Norfolk & Western Railroad Company." This cause was instituted to foreclose a mortgage upon the property of the Roanoke & Southern Railway Company, and had ripened into an order for foreclosure, and a sale thereunder; the purchaser being the Norfolk & Western Railway Company. The order for sale had provided as follows:

"The purchaser shall, as part consideration for the railroad property and franchises purchased, take the same, and receive the deed therefor, upon the express condition that, to the extent that the assets or the proceeds of assets in the receivers' hands not subject to any other lien or change shall be in-

sufficient, such purchaser, his successors or assigns, shall pay, satisfy, and discharge (a) any unpaid compensation which shall be allowed by the court to the receivers; (b) any indebtedness and obligations or liabilities which shall have been contracted or incurred by the receivers before delivery of possession of the property sold in the management, operation, use, or preservation thereof; and (c) also all unpaid indebtedness or liability contracted or incurred by the defendants, or either of them, in the operation of said railroad and 'property sold, which is prior in lien or superior in equity to said mortgage, except such as shall be paid or satisfied by the receivers, upon the court adjudging the same to be prior in lien or superior in equity to said mortgage, and directing payment thereof."

The intervention sought to subject the property so purchased to the lien of his judgment. The prayer of the intervention was refused. The intervener had based his claim on the provisions of section 1255 of the Code of North Carolina. This section gives priority to a judgment in tort over any mortgage executed by a corporation. The court held that, as the property sold, was the property of the Roanoke & Southern Railway Company, lessor, a judgment against the Norfolk & Western Railroad Company, the lessee, did not take priority, under this section, of the mortgage creditors of the lessor, to whose rights the Norfolk & Western Railway Company had succeeded. 90 Fed. 175. Mr. Hampton now files his intervention in the case of the Fidelity Insurance, Trust & Safe Deposit Company against the Norfolk & Western Railroad Company, claiming to be paid out of the earnings and assets which came into the hands of the receivers of the defendant railroad company. It is evident that this is a different proceeding from the first intervention. That sought to subject the purchaser of the property of the Roanoke & Southern Railway Company to the payment of this judgment, which had been obtained against the Norfolk & Western Railroad Company. This intervention seeks to subject funds which came into the hands of the receivers of the Norfolk & Western Railroad Company, during their receivership, to the payment of the judgment. The matter is not res judicata.

Under the decisions of the supreme court of the United States the earnings in the hands of receivers derived from the management of property in their hands are devoted to the payment of claims arising during the receivership, and expenses necessarily incurred in the management. Besides this, when there has been, before or during the receivership, a diversion of earnings to the payment of interest upon the mortgage debt, or to the improvement of the security of the mortgage debt, the courts have required the receivers to restore the amounts so diverted, and to apply them to certain claims for supplies furnished within a limited period before the receivership, which were necessary to keep the railroad company a going concern. Sometimes the necessity to this end for these supplies has been such as to warrant the court in subjecting the corpus of the property to their repayment. This doctrine has been established by a long line of cases, beginning with Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 399, down to Southern R. Co. v. Carnegie Steel Co., 176 U. S. 273, 20 Sup. Ct. 347, 44 L. Ed. 458. And in applying this doctrine the courts are not disposed to enlarge it in any way. They realize the necessity of a court of equity confining itself within very restricted limits in the ap-

plication of the doctrine that in certain cases a court having a road or fund under its control, may be justified in awarding priority over the claims of mortgage bondholders to unsecured claims originating prior to the receivership. Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663. In the Kneeland Case it is said that such priority has been given in a few specified and limited cases. In all the long line of cases referred to, in not one is this extraordinary preference allowed to a judgment obtained, after the receivership, on a tort of the corporation committed before the receivership. After a road has been placed in the hands of a receiver, and is managed and controlled by him, the receivership is responsible for all lawful contracts of the receiver, and for the negligent acts and torts of him or of his agents. A judgment against a receiver for any of these causes of action binds the receivership, and must be paid out of its earnings in the hands of the receiver; and, if these be deficient, then out of the corpus of the property of the proceeds of its sale. Cowdrey v. Railroad Co., 93 U. S. 352, 23 L. Ed. 590; Barton v. Barbour, 104 U. S. 126, 26 L. Ed. 672; McNulta v. Lochridge, 141 U. S. 327, 12 Sup. Ct. 11, 35 L. Ed. 796. But this doctrine is confined to cases in which the act complained of occurred during the receivership. It does not apply to a tort or to an ordinary contract of the corporation before the receivership began. A receiver is not bound by such torts or contracts. Oil Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235, 3 L. Ed. 1025. He cannot be compelled to assume the obligations of a lease made by the company. Railroad Co. v. Humphreys, 145 U. S. 105, 12 Sup. Ct. 795, 36 L. Ed. 690; Railroad Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787, 36 L. Ed. 632. In Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, it is declared that indebtedness for necessary supplies can seldom be allowed priority to the mortgage debt, and, whilst that case allowed priority to claims for rental of cars by and during the receivership, it disallowed such priority to rental of cars prior to the receivership. In Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, the supreme court refused priority out of proceeds of the sale of a railroad to one who had advanced money to pay operating expenses of a railroad prior to the receivership. If contracts of this character have no priority, surely damages for tort have none, unless such priority is secured by the statute laws of the state.

This brings us to the discussion of section 1255, Code of North Carolina. This section is in these words:

"Mortgages of incorporate companies upon their property or earnings, whether in bonds or otherwise, hereafter issued, shall not have power to exempt the property or earnings of such incorporations from execution for the satisfaction of any judgment obtained in the courts of the state against such incorporation, for labor performed, nor for materials furnished such incorporation, nor for torts committed by such incorporation, its agents or employés, whereby any person is killed or property injured, any clause or clauses in such mortgage to the contrary notwithstanding."

This statute, being a statute of the state of North Carolina, can only operate upon property within that state. It will be noted that this

section gives priority over a mortgage executed by a corporation to a judgment obtained against the mortgagor corporation, and declares that neither the property nor earnings of such mortgagor corporation are exempt from execution for the satisfaction of a judgment. It appears that in the case at bar the Norfolk & Western Railroad Company had a lease of the Roanoke & Southern Railway, its property and franchises. Prior to this lease all the property and franchises of the Roanoke & Southern Railway Company had been mortgaged to the Mercantile Trust & Deposit Company of Baltimore, this mortgage bearing date March 16, 1892. The lease was subordinate to the mortgage. On 29th May, 1896, the Mercantile Trust & Deposit Company of Baltimore filed its bill for foreclosure of this mortgage against the Roanoke & Southern Railway Company, the mortgagor and lessor, and the Norfolk & Western Railroad Company, the lessee; and on the same day F. J. Kimball and Henry Fink were appointed receivers of the Roanoke & Southern Railway Company, and were put in possession of all its property and franchises, thus displacing and superseding the lease. This bill of foreclosure culminated in a decree for sale. Under this decree all the property and franchises of the Roanoke & Southern Railway Company were sold, the sale was confirmed by the court, and on the 25th November, 1896, a deed sextipartite was executed, Messrs. Bowden and Sharp, special masters of the court, being of the first part, Kimball and Fink, receivers of the Roanoke & Southern Railway Company, of the second part, the Mercantile Trust & Deposit Company, of Baltimore, trustee under said mortgage, of the third part, the Roanoke & Southern Railway Company, of the fourth part, certain other persons (Glyn and others), of the fifth part, and the Norfolk, Roanoke & Southern Railroad Company, of the sixth part; whereby the whole of the property and franchises of the Roanoke & Southern Railway Company was conveyed to the party of the sixth part in fee. So that it appears that when the judgment of Gideon Hampton against the Norfolk & Western Railroad Company was obtained (February 22, 1897) the lease of the Norfolk & Western Railroad Company had been displaced by the proceedings for the foreclosure of a mortgage prior to the lease, and that on the day the judgment was entered the whole property of the Roanoke & Southern Railway Company had for nearly six months been conveyed to another wholly distinct corporation, in whose property and earnings at the date of the judgment the Norfolk & Western Railroad Company had no interest whatever. There was, therefore, no property upon which this section of the Code could operate, over which the Norfolk & Western Railroad Company had given a mortgage, or in whose earnings it shared,—nothing which could be taken in execution. The record does not disclose any other property of the Norfolk & Western Railroad in North Carolina, covered by mortgage, to which section 1255 of the Code of North Carolina can apply. The only other property in North Carolina in which the Norfolk & Western Railroad Company had an interest,—the Durham Division,—like the Roanoke & Southern, was held under a lease from the Lynchburg & Durham Railroad Company to the Norfolk & Western Railroad Company, subsequent to and subordinate to a mortgage of the lessor

company. This mortgage was foreclosed in 1896. So at the entry of this judgment the Norfolk & Western Railroad Company had lost all estate and interest in the Durham Division and its earnings.

The petition of intervention is dismissed.